## Chris Jensvold and Fred Abraham d/b/a Brook Auto v. Town & Country Motors, Inc., Charles S. Breckenridge

[649 A.2d 1037]

No. 93-186

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed October 14, 1994

*Stephen S. Blodgett* of *Blodgett, Watts & Volk,* Burlington, for Plaintiffs-Appellees.

*Leighton C. Detora* of *Valsangiacomo, Detora & McQuesten, P.C.,* Barre, for Defendant-Appellant.

**Johnson, J.** This case involves the sale of a used car by Town & Country Motors to Chris Jensvold and Fred Abraham doing business as Brook Auto, an automobile wholesaler. After the purchase, plain-

tiffs discovered the car was "clipped," which means it was made up of parts of two vehicles welded together to form one vehicle after each of the composite vehicles had suffered damage. The car consisted of the front of one Audi welded to the back of another. The parties appeal from both the trial court judgment for the buyers and the damages award. Seller argues that the court erroneously found it liable for damages to the buyers for fraud and breach of the implied warranty of merchantability. 9A V.S.A. § 2-314 (implied warranty of merchantability). Buyers argue the court should have found seller liable for damages under the Salvage Title Act, 23 V.S.A. § 2093. We affirm in part, reverse in part, and remand for redetermination of damages.

On December 27, 1988, Town & Country sold Jensvold, on behalf of Brook Auto, a used Audi for $4,500. Town & Country had taken the Audi as a trade-in from a third-party, who told Town & Country that the vehicle was clipped but that the title was "clean" in that it did not indicate that the car was salvaged or clipped. Although Town & Country knew the vehicle was clipped, it did not disclose the fact to Jensvold. After looking over the vehicle, Jensvold purchased it "as is."

When Jensvold purchased the car it had visible body damage from an accident that had occurred after the car was clipped. Jensvold repaired the damage for $1,300 and began marketing the car. In January 1989, a prospective purchaser's mechanic discovered a dent in the floor and a seam between the two halves. The prospect declined to purchase the car and explained why. In response, Jensvold called the Motor Vehicle Department to check the title's status and confirmed that the title was clean.

In April 1989, Jensvold took the Audi to a dealer to have it shown to prospective purchasers. This dealer informed Jensvold that the Audi was, in fact, clipped. Jensvold then took the car back to Town & Country and demanded an immediate refund of the purchase price along with the cost of his repairs. At that time, Jensvold had driven the car 7,000 miles. The trial court found that Jensvold, "not obtaining satisfaction," left Town & Country and took the car with him. On May 4, 1989, Jensvold's lawyer wrote a letter to Town & Country stating that Jensvold was revoking his acceptance of the car, and that Jensvold would return it to Town & Country at a place and time that was mutually convenient. Jensvold's lawyer also stated that unless arrangements were made in ten days, Jensvold would, at his election, either return the vehicle and tender title to it, or take such action as was deemed appropriate. Town & Country did not agree to take the

Audi back. Jensvold stopped marketing the car, but used it personally, driving it an additional 20,000 miles.

The trial court found that Town & Country had misrepresented the condition of the car, breached the implied warranty of merchantability, misrepresented the odometer reading, and failed to comply with 23 V.S.A. § 2093(b), which requires the seller of any salvaged, rebuilt, or totaled vehicle to disclose that fact to the purchaser. The trial court concluded, however, that buyers were not entitled to a refund of the purchase price pursuant to 23 V.S.A. § 2093(c) because they elected to keep the automobile rather than return it. The court awarded plaintiffs damages consisting of the difference between the purchase price paid and the actual value of the vehicle in its clipped condition, plus the cost of repair, lost profits, and costs.

It is first necessary to determine whether there is a basis of liability on any of the disputed grounds—violation of the Salvage Title Act, fraud, and breach of warranty of merchantability.[1] We will then address the parties' arguments regarding damages.

## I.

Vermont's Salvage Title Act requires "[a]ny person who sells . . . or offers for sale . . . any interest in a salvaged, salvaged and rebuilt or totaled vehicle [to] disclose the fact that the vehicle has been salvaged, salvaged and rebuilt or totaled to a prospective purchaser both orally and in writing before a sale, trade or transfer is made." 23 V.S.A. § 2093(b). If a seller fails to comply with the notice requirements of the Salvage Title Act, "the seller [is] required, at the option of the buyer, to refund to the buyer the purchase price, including taxes, license fees and similar governmental charges." *Id.* § 2093(c). The statute imposes strict liability for violation if the buyer opts for a refund.

The trial court held that while defendant had violated the Salvage Title Act, plaintiffs were not entitled to recover the purchase price under that statute because plaintiffs elected to keep the vehicle rather than return it. The court's conclusion that plaintiffs elected to keep the car cannot be reconciled with the findings and must be reversed. *Dartmouth Savings Bank v. F.O.S. Assocs.*, 145 Vt. 62, 66,

---

[1] Plaintiffs may have been able to state a claim that they revoked acceptance under 9A V.S.A. § 2-608, but they did not raise it, and the trial court did not find liability on that theory. We, therefore, do not address defendant's arguments against liability under that statute.

486 A.2d 623, 625 (1984) ("misapplication of law to supported . . . findings is subject to correction on appeal"); *Stevens v. Cross Abbott Co.*, 129 Vt. 538, 544, 283 A.2d 249, 253 (1971) ("when the conclusion of law is inconsistent with the facts that underlie such conclusion, [it will] fail to stand"). The trial court found that Jensvold "took the Audi back to Town & Country and demanded an immediate refund of the purchase price together with the cost of his repairs." The court further found that "not obtaining satisfaction, Jensvold left Town & Country taking the Audi with him." In addition, the court found that buyers' lawyer wrote to Town & Country and advised that they were revoking acceptance and that buyers would return the Audi at a time and place that was mutually convenient. Jensvold's visit to Town & Country and the attorney's letter were each independently sufficient to notify the seller that the buyers did not want the vehicle and did not desire to retain it. In both cases, seller rejected the offer to return the vehicle.

 The trial court's conclusion that buyers elected to keep the car was undoubtedly based on Jensvold's personal use of the car. The Salvage Title Act does not, however, condition a buyer's remedy on anything more than an implied offer to return the vehicle for a refund of the purchase price. See 23 V.S.A. § 2093(c). If this Court were to read any greater obligation into the statute, we would undermine § 2093(c), which provides the buyer with the option of requiring a refund. In many cases, because of economic circumstances, a seller's refusal to refund the purchase price would force the buyer to retain and use the vehicle. Thus, if we were to adopt the trial court's reading, any seller could deprive a buyer of this statutorily created remedy by refusing to refund the purchase price and forcing the buyer to retain the vehicle. In light of the strict liability imposed by the statute and our concern that any other interpretation would frustrate the purpose of the statute, we conclude that after an offer to tender the vehicle for a refund is rejected, a buyer's use of the vehicle does not nullify the offer. In this case, plaintiffs are entitled to a refund of their purchase price, $4,500, and taxes, license fees and similar governmental charges. *Id.* § 2093.

 Plaintiffs' continued use of the vehicle, however, is not without consequence. Seller is entitled to a setoff equivalent to the value of the use of the vehicle under general equitable principles even though § 2093 is silent on the subject. See *Tom Bush Volkswagen, Inc. v. Kuntz*, 429 So. 2d 398, 399 (Fla. Dist. Ct. App. 1983) (setoff for use of

automobile before revocation proper); *McCullough v. Bill Swad Chrysler-Plymouth*, 449 N.E.2d 1289, 1294 n.4 (Ohio 1983) (setoff for use of automobile after revocation proper if reasonable). The burden of proof is on the seller to prove its damages as a result of the use. *Jones v. Abriani*, 350 N.E.2d 635, 644 (Ind. 1976). We also note that "[w]here the decrease in the value of the goods is due to their own defects, rather than the use of the goods by the buyers, there would be little provable damage." *Id.* Neither should the buyer be charged with the reduction in the value of the vehicle attributable to the passage of time, because it was the seller's refusal to accept the vehicle that led to that damage. In no event should the amount of the offset exceed the market value of the vehicle when sold to the buyer, taking into account its undisclosed salvaged or rebuilt condition. Accordingly, we must remand the case to the trial court for a determination of the setoff.

On remand, our holding will require the trial court to redetermine the market value of the automobile in its clipped condition. In this case, the court found the market value to be $3,000, but after plaintiffs had spent $1,300 for body work. Seller challenges that amount on appeal. Both parties presented methods to determine the vehicle's actual value in its clipped condition, but the trial court did not explain how it derived the $3,000 figure. Where the evidence conflicts, the tribunal must state clearly what evidence it credits and why, so that the parties and this Court will know how the decision was reached. *Corrette v. Town of St. Johnsbury*, 140 Vt. 315, 316, 437 A.2d 1112, 1113 (1981).

## II.

The trial court also found seller liable for misrepresentation and awarded buyers damages for fraud. The only argument seller makes on appeal against liability on a misrepresentation theory is that because Jensvold is a merchant and had a reasonable opportunity to inspect the car, he should be deemed to have accepted the car with full knowledge of the defect pursuant to 9A V.S.A. § 2-606(1).

Seller's argument, based on § 2-606(1),[2] appears to be that Jensvold had an equal opportunity to discover the clipping and

---

[2] Section 2-606(1) states in relevant part:

Acceptance of goods occurs when the buyer

(a) After a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity.

therefore seller is not liable for misrepresentation. See *Union Bank v. Jones*, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980) (no action lies for fraud if misrepresentation was "open to the defrauded party's knowledge"). The trial court found that because of the way Audis are built, the presence of a seam would not alone indicate the vehicle was clipped. It also found that it was not necessary for Jensvold to check whether the Audi was clipped because clipped automobiles are rare in Vermont and that Jensvold had no reason to believe Town & Country would sell him a clipped vehicle. The trial court did not err in rejecting seller's argument. Accordingly, buyers are entitled to damages for fraud.

■■ This Court has adopted a flexible approach to calculating damages in fraud cases. *Kramer v. Chabot*, 152 Vt. 53, 57, 564 A.2d 292, 294 (1989). In general, it is within the trial court's discretion to determine the best measure of damages to compensate the injured party. *Id.* Here, the trial court awarded plaintiffs $1,300 for the repair of the vehicle's body damage, and $1,200 for lost profits. Under the circumstances of this case, the award was reasonable. Recovery for the cost of repair to the vehicle was reasonable as consequential damages. See *Mitchell v. White Motor Credit Corp.*, 627 F. Supp. 1241, 1252 (D. Tenn. 1986) ("The purchaser who has been the victim of fraud or mistake . . . may recover, in addition to the purchase price, other damages which he or she incurred in good faith by reason of the fraud or mistake, such as the cost of improvements."). Award of lost profits was also proper. Under 9A V.S.A. § 2-721, which provides that "[r]emedies for material misrepresentation or fraud include all remedies available under [Article 2 of the Uniform Commercial Code] for non-fraudulent breach," plaintiffs are entitled to their lost profits. See *Deerfield Commodities, Ltd. v. Nerco, Inc.*, 696 P.2d 1096, 1112 (Or. Ct. App.), *reh'g denied*, 702 P.2d 1111 (Or. 1985) (lost profits proper since Oregon codified U.C.C. provision extending all remedies for fraud and misrepresentation). Moreover, because plaintiffs were wholesalers, lost profits were foreseeable and compensable. 3 E. Farnsworth, Farnsworth on Contracts § 12.11, at 218; § 12.14, at 250 (1990).

■ Buyers also argue on appeal that the trial court should have awarded punitive damages for seller's fraud. Seller argues that buyers abandoned their claim for punitive damages by failing to raise it in their requests to find. Buyers respond that they requested punitive damages in their complaint and trial memorandum and that

this was sufficient to preserve the claim. The claim for punitive damages, even though it was not raised in the buyers' requests to find, is not abandoned. See *Lewis v. Cohen*, 157 Vt. 564, 572, 603 A.2d 352, 356 (1991) (issue is preserved if plaintiff fairly presented issue when it pleaded claim and briefed claim to the court). Plaintiffs included the claim for punitive damages in both the complaint and in the plaintiffs' trial memorandum. The trial court did not address the issue of punitive damages in its final order. While the court denied numerous specific damage requests in its conclusions of law, it did not resolve the claim for punitive damages. Therefore, we must remand the issue of punitive damages for a proper determination by the trial court. See *id.* ("Where a trial court has failed to resolve a claim made to it, the proper remedy is for us to remand.").

## III.

Town & Country argues that it should not be held liable for breaching the implied warranty of merchantability. We agree, but not for the reasons argued by seller. In this case, because buyers are returning the vehicle for refund of the purchase price, breach of warranty damages, which are acceptance damages, are not applicable. See *Costa v. Volkswagen of America*, 150 Vt. 213, 220, 551 A.2d 1196, 1201 (1988) ("Acceptance damages are not applicable where acceptance has been revoked."), *overruled on other grounds by Gochey v. Bombardier, Inc.*, 153 Vt. 607, 613, 572 A.2d 921, 925 (1990).

*The order of the Washington Superior Court, dated February 25, 1993, to the extent that it denied plaintiffs recovery under 23 V.S.A. § 2093(c) and granted recovery for breach of implied warranties of merchantability under 9A V.S.A. § 2-314, is reversed: the cause is remanded for the purpose of determining damages consistent with this opinion. In all other respects the order is affirmed.*

**Morse, J.,** concurring in part, dissenting in part. While I agree with most of the Court's opinion, I respectfully dissent to the holding that buyers' claim for punitive damages was preserved.

It is fairly obvious why the issue of punitive damages was not addressed by the trial court. First, any claim of "malice" was exceedingly thin, and I doubt the court would have awarded punitive damages in any event. Second, punitive damage claims are routinely included in fraud complaints and mentioned in boiler plate fashion in a trial memorandum submitted before trial. In this case, the buyers mentioned punitive damages without any discussion or analysis. The

word "punitive" occurred once in the seventeen-page trial memorandum. After that point, plaintiffs never pursued the issue. I cannot fault the trial court for concluding plaintiffs were not interested in a ruling on punitive damages. Plaintiffs had abandoned the damage claim. If, however, plaintiffs, despite their lack of enthusiasm for the issue, had merely overlooked the claim after trial in their requests—which seems like a rather significant issue for a mere oversight—I think it incumbent on them to make that known to the trial court initially.

The reason for informing the trial court of any misunderstandings or mistakes is to avoid the waste of time and resources inherent in pursuing the issue through the appellate process. Failure to bring the issue to the trial court's attention is also an affront to the cardinal rule of appellate procedure that a lower court is not to be reversed for error it did not have a chance to correct. In sum, if the issue of punitive damages had been raised below, it probably would have gone against the buyers and saved nearly two years of time.

*Lewis v. Cohen*, 157 Vt. 564, 572, 603 A.2d 352, 356 (1991), relied on by the Court, may be distinguished. There, apparently plaintiffs-appellants brought to the trial court's attention after trial the issue raised on appeal. A brief containing argument on the issue had been submitted to the court along with the proposed findings. Consequently, the trial court's attention was focused on the pertinent issue. To the extent *Lewis* absolves an appellant from making a post-trial motion pointing out omission of any claim, I would overrule it. All too often, a disappointed party refrains from pointing out to a trial court an oversight in hopes of gaining a new trial or other technical advantage unrelated to the oversight, such as delay.