**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| | } | |
| **In re Grist Mill Horse Barn** | } | **Docket No. 205-9-08 Vtec** |
| **Redevelopment Plan** | } | |
| | } | |

### Decision on Multiple Motions

Mahaiwe, LLC ("Applicant") has appealed a decision by the City of Vergennes Development Review Board ("DRB"), which denied Applicant's application for conditional use and site plan approval to redevelop a horse barn located on Grist Mill Island in Vergennes, Vermont. Applicant is represented by David J. Shlansky, Esq.; the City of Vergennes ("City") is represented by James W. Runcie, Esq.; no adjoining landowners have appeared in these proceedings.

This is an on-the-record appeal, since the City has adopted and implemented the procedures necessary for such appeals, as required by 24 V.S.A. § 4471(b). The City has therefore submitted the official record from the proceedings below, pursuant to Rule 5(h)(1)(A) of the Vermont Rules for Environmental Court Proceedings ("V.R.E.C.P") and Rules 10 and 11(b) of the Vermont Rules of Appellate Procedure ("V.R.A.P.").

Currently pending before the Court are four related motions filed by Applicant. Applicant first requests that certain materials be added to the record supplied by the City. Applicant has also moved for summary judgment,[1] advocating that the DRB Decision be vacated. In the hope of prevailing, Applicant has also moved to disallow remand as a remedy and requested that we consider non-record materials in conjunction with this motion. The City supports Applicant's motion to supplement the official record, but responds in opposition to the motion for summary judgment. The City has not responded to either the motion to disallow remand or the motion to consider non-record materials. The pending motions are now ripe for review; each is addressed in turn below.

We first note that our role in this on-the-record appeal is limited: we are only authorized to review the appealed-from decision from an appellate perspective, giving deference to the

---

[1] Our procedural rules are less than clear as to how pleadings in an on-the-record appeal should be crafted and titled. It appears that briefing under the Appellate Rules is more appropriate than summary judgment under V.R.C.P. 56, since we are not authorized in on-the-record proceedings to adjudicate facts, as explained in more detail in the following paragraph.

1

DRB's factual findings when there is substantial foundation in the record; we are not charged with nor authorized to conduct our own evidentiary proceeding or render our own factual findings. In re Stowe Highlands Resort PUD to PRD Applic., Docket No. 159-8-07 Vtec, slip op. at 2 (Vt. Envtl. Ct. Jan. 25, 2008) (Durkin, J.), aff'd, 2009 VT 76. To give context to our analysis, we nevertheless recite the following material facts present in the record from the proceedings below:

**Factual Background**

1.       Applicant is the owner of the Grist Mill Building and an abandoned horse barn, both of which are located on Grist Mill Island at 360 Main Street in downtown Vergennes.[2] The Grist Mill Building is a mixed-use building that consists of four apartments and approximately 2,280 square feet of office space, but the horse barn is a dilapidated structure that is presently unused. In addition to the two buildings, a twelve-space parking area is currently available on the Island.

2.       On June 5, 2008, Applicant submitted to the DRB an application for a conditional use permit and site plan approval in order to redevelop the horse barn. Applicant proposed to convert the horse barn into 2,100 square feet of office space and to provide off-street parking for the project at Settler's Park, a nearby parking and recreation area, where Applicant has an exclusive easement for twenty-seven parking spaces. Applicant indicated in its application that it would allocate nine off-street parking spaces available at Settler's Park, bringing the total number of parking spaces available to the tenants of Grist Mill Island to twenty-one.

3.       Settler's Park is located within 600 feet of the proposed redeveloped horse barn, but it is not located on Grist Mill Island. To reach Settler's Park from the Island, a pedestrian must cross Main Street, a crossing that occurs mid-block at the apex of the bridge over Otter Creek.[3] There is currently no crosswalk at this location, and the only sidewalk on the bridge is located on the side opposite Grist Mill Island.

4.       On August 4, 2008, the DRB held a public hearing on Applicant's application for conditional use and site plan approval. At least three individuals appeared and testified on behalf

---

[2]  Main Street is also known as Vermont Route 22A.

[3] Grist Mill Island is situated in Otter Creek on the northern side of the Otter Creek Bridge (i.e., Main Street), and access to the Island is provided by an ingress/egress at the middle of this bridge, effectively creating a three way intersection at the apex of the bridge. Once a pedestrian crosses Main Street at this intersection, he or she reaches Settler's Park by walking a few hundred feet along the sidewalk on the southern side of the bridge.

of Applicant, although their identities are absent from the current record. No adjoining landowners or other interested persons attended the hearing.

5. At the hearing, the DRB took testimony and asked questions focusing on two main issues pertaining to conditional use and site plan approval: the sufficiency of off-street parking and the safety of pedestrians walking between Grist Mill Island and Settler's Park. As part of site plan review, the DRB must consider whether a proposed project provides for "safe pedestrian facilities including connections to the street network." City of Vergennes Zoning Regulations § 703(4) [hereinafter "Regulations"]. Conditional use review likewise requires the DRB to determine whether a proposal will "result in an undue adverse effect on" the conditional use standards enumerated in the Regulations, including the zoning bylaws in effect and off-street parking. Regulations § 803.

6. During the public hearing, Applicant testified that, although Applicant's original application allocated to the project nine parking spaces at Settler's Park, it was willing to associate up to nineteen parking spaces at Settler's Park. This would bring the total number of available off-street parking spaces to thirty-one. Specifically, Applicant testified:

> Per our submission that we made earlier this month, we showed that we would require nine spaces . . . and those nine spaces would be located at Settler's Park. There are several spaces left over [at Settler's Park] . . . seven or eight of which would require the removal of a [utility] pole . . . . As part of this application, we are not suggesting we would remove that pole, so that would really leave about eighteen or nineteen spaces that can be built per that plan . . . . So we are suggesting that we would use nine of them. We are amenable to—if the [DRB] wants or suggests that we build ten or eleven spaces—we may be amenable to that as well, but a strict read of the zoning regulations shows that we would need nine spaces over there.

Audio Recording of DRB Public Hearing, at 6:15–7:28 (Aug. 4, 2008) [hereinafter "Recording"]. Applicant later made clear: "We don't have any issue with [adding parking spaces at Settler's Park]. It's really simple to build these [spaces]. . . . If that would make you happy, we're happy to do it." Id. at 26:30–26:49.

7. The DRB also took testimony regarding the safety of pedestrians walking between Grist Mill Island and Settler's Park, specifically asking about the feasibility of a crosswalk on Main Street at the apex of the bridge.

8.     Applicant stated in response that a crosswalk was not part of the proposal; it was not an option until the City constructs a sidewalk on the side of the bridge nearest Grist Mill Island. Applicant explained:

> In front of the entrance to Grist Mill Island, there is not a crosswalk proposed there, and currently there is not signage proposed there. Renny Perry, the City Manager, proposed to put a crosswalk there and signage there and VTrans said: "No." They said that currently . . . the best thing to do there is to leave it as is unless you were to put a sidewalk on the other side [of the bridge] . . . . Until that sidewalk gets installed [by the City], VTrans is . . . committed to not putting a crosswalk in front of Grist Mill Island. Renny has said that if VTrans said that it's okay to put a sign there—a similar sign to the one that's in front of Settler's Park[, which has a person walking and an arrow]—the city would be amenable to that and would install a sign.

Id. at 13:45–14:59. Under Applicant's proposal, pedestrians would simply "look both ways before they cross" Main Street in front of the Island. Id. at 15:10–15:33.

9.     A DRB member (not identified in the record) ultimately asked Applicant: "Do you have some evidence that says, yes, this is a safe way to get from Settler's Park over across the bridge to the Island?" Id. at 28:04–28:11.

10.     Applicant then referred to the Stantec Report, a study completed in 2007 at the direction of the City, which assessed the feasibility of installing a sidewalk on the side of Main Street fronting Grist Mill Island, but also reviewed traffic and pedestrian patterns in the area. Applicant testified:

> Yeah, we do: the AOT study. They think there are good lines of sight; they think that it would be nice to have the traffic calming affects of a narrower passageway there, but I don't think anyone said that there was an urgent safety issue.

Id. at 28:11–29:04. Applicant continued by explaining that the Stantec Report found no evidence that there was a safety hazard at the crossing:

> The study . . . did not . . . show any data that indicated that there was a safety hazard there. It showed that it would be optimal if there was a sidewalk put there, and it could avoid potential safety problems, but it did not determine that there was a problem with line of sight—that there was a problem with anything—so I'm not sure that an unsubstantiated inference that there is a safety hazard there is justified.

Id. at 31:13–31:52.

4

11.     In further support of the current crossing's safety, Applicant testified that pedestrians have been crossing Main Street for decades at the apex of the bridge.  Individuals who park at Settler's Park must walk across this highway bridge to access the City's recreation field on Pump House Island.[4]  Applicant explained:

> We do have evidence that the City has not had a problem with inviting people to the Pump House Island for decades.  And if someone can show that—even though there has been a public use of that space—there has been a safety hazard [in crossing Main Street at the apex of the bridge], it would have come out by now, especially with all the studies that have been done with the bridge.

Id. at 30:55–31:12.

12.     Following the hearing, on September 8, 2008, the DRB issued a two-page written decision denying Applicant's application for conditional use and site plan approval.  The DRB determined that the application did not provide for safe pedestrian facilities, as required for site plan approval under Regulations § 703(4).  It stated:

> The [DRB] finds that . . . there is no crosswalk on the bridge connecting the sidewalk located on the south side of the bridge and the access to Grist Mill Island which is on the north side of the bridge.  The Applicant testified that VTrans and the City Manager objected to the delineation of a crosswalk in the middle of the bridge.  Since there is no crosswalk on the bridge, and therefore, there is not a provision for safe pedestrian facilities including connections to the street network, the [DRB] finds that that application does not meet the requirements of Section 703(4).

In re Application by Mahaiwe, LLC, Findings of Fact & Decision, at 2 (City of Vergennes Dev. Review Bd. Sept. 8, 2008) [hereinafter "Decision"].  The DRB did not make any additional findings concerning the safety of pedestrians crossing in front of Grist Mill Island.  Despite the extensive discussions during the public hearing, the Decision does not mention the Stantec Report.  Nor does the Decision indicate that the DRB found the existing crossing to be unsafe for pedestrians in the absence of a crosswalk.

13.     The DRB also determined that Applicant's proposal did not provide for sufficient off-street parking, as required by Regulations § 1102.  It stated:

> The [DRB] finds that a total of twenty-four off-street parking spaces are required [to satisfy Regulations § 1102].  The application that was submitted proposes to

---

[4]  Pump House Island is a City park with picnic tables and interpretive signs that is connected to Grist Mill Island by a pedestrian bridge.  Pedestrians follow the same route to access Pump House Island from Settler's Park as they would to access Grist Mill Island.  Recording, at 29:38–31:12.

5

create a total of twenty-one parking spaces. . . . The [DRB] finds that the proposal does not meet the minimum requirements for off-street parking as required in Section 1102 of the zoning regulations.

Id. After making these findings, the DRB concluded that "the application does not conform to the general and specific standards prescribed in the zoning regulations for the reasons set forth above." Id. The DRB did not explain how Applicant's noncompliance with either Regulations § 703(4) or § 1102 results in an "undue adverse effect" on any of the conditional use standards prescribed in Regulations § 803. Nor did the DRB make reference to Applicant's offer to provide additional parking spaces at Settler's Park, which the record reflects Applicant offered to absolve any shortcoming of their original parking plan.

14. Applicant timely appealed that decision to this Court on September 19, 2008, requesting that this Court vacate the DRB's decision below.

## Discussion

In an on-the-record appeal such as this, we must determine "whether there is substantial evidence in the record as a whole from which the factual findings of the DRB might reasonably be inferred, as well as whether the DRB correctly applied the municipal ordinance and state statute to those facts." In re van der Weyden, No. 23-2-06 Vtec, slip op. at 2 (Vt. Envtl. Ct. Nov. 29, 2006) (Wright, J.) (citations omitted). The factual findings "are not conclusive, but they are given great weight, if the DRB adequately explains its reasons for finding as it does." Id. (citing In re Leikert, No. 2004-213 (Vt., Nov 10, 2004) (unpublished mem.)). Legal issues, on the other hand, are reviewed without affording deference to the DRB's legal conclusions; they are reviewed de novo. In re Stowe Highlands Resort PUD to PRD Applic., 2009 VT 76, ¶ 7. We apply these standards to our analysis of the issues raised in the pending appeal.

The first issue that we must address involves the composition of the record for the proceedings below. The City has provided the Court with a record that consists of eight items: (1) Applicant's zoning permit application; (2) Applicant's application for site plan and conditional use approval; (3) certified copy of the Zoning Regulations; (4) the DRB notice of the public hearing; (5) an audio recording of the public hearing; (6) two letters submitted on behalf of Applicant and the attached site plan drawings; (7) the DRB's September 8, 2008 Decision; and (8) the notice of appeal. Applicant has requested that we also include in the official record the portions of the Stantec Report that were discussed during the public hearing, even though

6

Applicant concedes that it did not request that the Stantec Report be admitted into evidence during the proceedings below. See Recording, at 28:11–29.04 and 31:13–31:52 (discussing the study's results in broad terms).

Rule 10(a) of the V.R.A.P. limits the record on appeal to the transcript and the original papers filed in the tribunal below. V.R.A.P. 10(a). The failure to admit evidence during the proceedings below normally precludes the "back door" submission of evidence on appeal. See, e.g., State v. Brown, 165 Vt. 79, 82 (1996). However, our procedural rules modify V.R.A.P. 10 for on-the-record appeals brought to this Court. See V.R.E.C.P. 5(a)(2) (explaining that the V.R.A.P. govern these proceedings "except as modified by this rule"). Rule 5 of the V.R.E.C.P., in turn, includes in the record both "the original papers filed with the municipal panel" as well as "any writings or exhibits considered by the panel in reaching the decision appealed from." V.R.E.C.P. 5(h)(1)(A). Thus, to be included in the record in this appeal, the DRB must have considered the Stantec Report in reaching its decision to deny Applicant conditional use and site plan approval.

Our review of the record provided by the City indicates that the DRB did, in fact, consider the Stantec Report in reaching the decision below. Not only was the Stantec Report discussed in depth during the public hearing, but it appears that the DRB relied, at least in part, on the Stantec Report in assessing the Main Street crossing to Grist Mill Island. At one point, an unidentified member of the DRB stated:

> There is evidence that says . . . that what's currently there in terms of getting across the bridge—getting across the road—isn't a good way of going about things, which is to say that the City went ahead got a grant; they did a study. I've seen it because I work on the Planning Commission.

Recording, at 27:38–27:54.

Acknowledging that the DRB relied on the Stantec Report in reaching its decision, the City supports including it in the record. However, the City requests that the entire Report be included, not just the limited portions advocated by Applicant. Under the Vermont Rules of Evidence, when part of a writing is introduced by one party, the opposing party may seek the introduction of any other part that "ought in fairness to be considered contemporaneously with it." V.R.E. 106. Because the Report is a writing that was considered by the DRB in reaching its decision to deny Applicant's application, and because both parties seek its admission without

7

objection, we conclude that the entire Stantec Report should be considered as part of the official record in this appeal. Accordingly, Applicant's motion to complete the record is **GRANTED**.

Turning to the merits of this appeal, Applicant contends that the DRB's Decision below should be vacated, arguing that the DRB misapplied the Regulations pertaining to site plan and conditional use review, and in the alternative, that the DRB's findings are not supported by the evidence in the record. We take these arguments in turn.

Applicant first argues that the DRB erred in applying the Regulations governing site plan review, insisting that the DRB may only impose appropriate conditions and safeguards to address concerns raised during site plan review. Applicant essentially contends that a finding of noncompliance with § 703(4), a site-plan consideration, cannot be grounds to deny its application. This argument is not supported by the language of the Regulations or the statute authorizing site plan review; we therefore reject it.

The Regulations authorize the DRB to conduct site plan review pursuant to 24 V.S.A. § 4416. Regulations § 701. Although the statute expressly authorizes the DRB to "impose appropriate conditions and safeguards . . . with respect to" the site-plan considerations specified in the Regulations, the statute also indicates that "approval of site plans" is a "prerequisite to the approval of any use or structure except one-family and two-family dwellings." 24 V.S.A. § 4416. The state statute therefore contemplates the authority to deny a proposed use based on its failure to satisfy the objectives considered during site plan review. The DRB exercised this authority after determining that Applicant's proposal contained deficiencies in the site plan; namely, it did not provide for safe pedestrian facilities, as required by Regulations § 703(4). The DRB determined that a crosswalk was a prerequisite to providing a safe pedestrian connection to the street network.

Applicant next argues that the DRB's determination of noncompliance with Regulations § 703(4) is unsupported by substantial evidence in the record. Applicant maintains that the record does not support a finding that Applicant failed to provide a safe pedestrian connection to the street network. We need not reach this argument, however, because we conclude that the DRB's decision is inadequate on its face; it does not articulate sufficient factual findings by which we can review whether the evidence supports its legal determination.

In an on-the-record decision, the DRB is obligated make separate findings of fact and conclusions of law. 24 V.S.A. § 1209(a). The "[f]indings of fact shall explicitly and concisely

8

restate the underlying facts that support the decision," and, in turn, the "[c]onclusions of law shall be based on the findings of fact." Id. § 1209(b)–(c). In other words, the DRB has a duty to provide "a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached." In re Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 10, 2004) (unpublished mem.) (citing New England P'ship v. Rutland City Sch. Dist., 173 Vt. 69, 74 (2001)). Failing to articulate the factual findings underlying an on-the-record decision is cause to vacate the decision; such findings inappropriately force this Court to peruse the record in search of facts that might support the DRB's legal conclusions. Id. Were we to do so, we would improperly invade the DRB's responsibility of assessing the weight and credibility of witnesses that appeared before that Board. Id.

The DRB made only two findings before concluding that Applicant's proposal failed to provide for a safe pedestrian connection to the street network: (1) that there was no crosswalk on the bridge in front of Grist Mill Island; and (2) that VTrans and the City Manager objected to placing a crosswalk at the apex of the bridge. Decision at 2. The DRB therefore presumably determined that it was unsafe for pedestrians to cross the bridge without a crosswalk. Notably absent from the DRB's decision, however, is any findings concerning the safety of the existing pedestrian crossing. Despite the extensive testimony on the subject during the public hearing, the DRB did not determine that the existing crossing is unsafe for pedestrians.[5] The DRB also failed to explain how the increase in pedestrians caused by this barn renovation project would materially decrease the safety of foot traffic crossing Main Street from Settler's Park. Without any such findings, we are left to wonder how the DRB determined that a crosswalk is a necessary prerequisite to provide for a safe pedestrian connection to the street network, as required by Regulations § 703(4).

The City now argues on appeal that the Stantec Report, taken as a whole, provides sufficient evidence that the existing crossing is unsafe. Although there is evidence from the public hearing that the DRB relied on the Stantec Report, the written decision does not identify what portions of the Stantec Report informed the DRB's conclusion. We are left to wonder where in the Stantec Report there is foundation for the DRB's legal conclusions concerning unsafe conditions. To produce an adequate decision for an on-the-record appeal, "the basis of

---

[5] In fact, some testimony given during the public hearing directly contradicts this conclusion. Applicant testified that pedestrians have traditionally crossed the apex of the bridge to reach Pump House Island without any incidents of injury. Recording, at 15:10–15:33.

the DRB's decision should be apparent from its factual findings." In re Curry Variance Application, No. 222-10-07 Vtec, slip op. at 1 n.1 (Vt. Envtl. Ct. Feb. 5, 2009) (Wright, J.) (citing In re Leikert, No. 2004-213, slip op. at 1–2). It is not our role in this appeal to peruse the record and "fill in the gaps left by the DRB's decision." In re Leikert, No. 2004-213, slip op. at 2. Any reliance on the Stantec Report must therefore be apparent on the face of the DRB's final decision. The DRB decision lacks this clarity of notice.

Accordingly, we conclude that the DRB's decision is inadequate with regard to site plan review under Regulations § 703(4). The DRB failed to articulate any findings of fact upon which its legal conclusions may be based regarding the safety of Applicant's proposed pedestrian crossing. We therefore have no basis upon which to review whether substantial evidence supports the DRB's legal conclusions that the existing crossing is unsafe or that a crosswalk is a necessary prerequisite for the proposed project to maintain a safe pedestrian connection to the street network. As a result, we must **VACATE** the DRB's decision with regard to site plan review.

Applicant also argues that the DRB's decision regarding conditional use approval should be vacated, contending that the DRB misapplied Regulations § 803. As explained above, we will review whether the DRB correctly applied the Regulations to the facts without affording any deference to the DRB's legal conclusions. In re Stowe Highlands Resort PUD to PRD Applic., 2009 VT 76, ¶ 7. For the following reasons, we agree with Applicant.

To receive conditional use approval under the Regulations, Applicant must establish that the "proposed use will conform to the general and specific standards set forth in section 803." Regulations § 801. This necessarily involves rendering a legal determination of whether the proposed project will result in an "undue adverse effect" on the standards outlined in § 803. Regulations § 803 directs that a proposal will have an undue adverse effect if the "impact caused by [the] land development . . . cannot be reasonably mitigated." Regulations § 106 (defining "undue adverse effect"). Thus, conditional use review pursuant to Regulations § 803 requires the DRB to examine whether a proposal's impact will have an adverse effect that cannot be reasonably mitigated.

The DRB did not apply this legal standard before concluding that "the application [did] not conform to the general and specific standards prescribed in the zoning regulations." Decision at 2. After finding that Applicant's proposal did not comply with Regulations

10

§§ 703(4) and 1102, the DRB simply concluded that the conditional use standards were not satisfied. The DRB did not explain how the findings of noncompliance resulted in an undue adverse effect on the standards announced in Regulations § 803. It further did not examine whether the proposal's impact could be reasonably mitigated, an analysis that §§ 106 and 803 require before a legal determination is announced on whether a project conforms to the conditional use standards.[6] The DRB's conclusory statement is deficient. We therefore conclude that the DRB's legal analysis was insufficient under Regulations § 803 and therefore **VACATE** the DRB's decision with regard to conditional use approval.

For the reasons discussed above, Applicant's motion for summary judgment is **GRANTED** and the DRB's Decision denying Applicant site plan and conditional use approval is **VACATED**. We conclude that the DRB's findings with regard to site plan review under Regulations § 703(4) are inadequate because the DRB failed to announce findings sufficient enough to support its legal conclusions concerning the safety of Applicant's proposed project, absent a crosswalk in front of Grist Mill Island. We further conclude that the DRB insufficiently applied Regulations § 803 pertaining to conditional use review because it did not first determine whether the proposal would have an "undue adverse effect" on the applicable standards, as required by the definition for that phrase in Regulations § 106.

In light of the foregoing discussion, we must next consider the appropriate remedy. Applicant has moved to disallow remand as a remedy, explaining that this Court has the discretionary authority to remand a particular appeal and that a number of factors present in the current situation counsel against remand. Applicant has further filed a motion requesting that we consider non-record materials in support of this argument. Although Applicant does not expressly suggest an alternative remedy, it appears that Applicant would like us to freely examine the record and render our own findings and conclusions, ultimately granting Applicant approval to redevelop the horse barn. Unfortunately, we do not have the authority in this on-the-record appeal to grant the relief Applicant requests.

Applicant correctly notes that this Court has the authority to "affirm, reverse, or modify the decision of the tribunal appealed from, . . . [or] remand the case for further proceedings consistent with the order of the court." V.R.E.C.P 5(j). Whether to remand a particular appeal is

---

[6] This is particularly perplexing considering Applicant's willingness to dedicate additional parking at Settler's Park. See Recording, at 6:15–7:28 and 26:30–26:49.

11

necessarily within our discretion.  In re Maple Tree Place, 156 Vt. 494, 501 (1991).  However, our discretion is tempered by the Court's authority in on-the-record appeals.

Our role in an on-the-record appeal is similar to that of an appellate court; we are constrained to reviewing the official record of the proceedings below.  24 V.S.A. § 4471(b).  Our mandate is to review the record to determine whether the DRB's Decision is supported by substantial evidence.  In re van der Weyden, No. 23-2-06 Vtec, slip op. at 2 (Vt. Envtl. Ct. Nov. 29, 2006) (Wright, J.).  In the event that the record is incomplete, or the decision is inadequate, we do not have the authority to convert an on-the-record appeal into a de novo proceeding.  In re Sprague Farms, LLC, No. 107-6-08 Vtec, slip op. at 4 (Vt. Envtl. Ct. Nov. 4, 2008) (Wright, J.).  As a result, we cannot take new evidence, and we cannot review the record anew to derive our own findings and conclusions; this "would be a degradation of on-the-record review."  In re Miller Conditional Use Applic., No. 59-3-07 Vtec, slip op. at 5–6, 17 (Vt. Envtl. Ct. Nov. 5, 2007) (Durkin, J.).  We therefore conclude that we have no authority to grant the relief Applicant requests.[7]

Accordingly, this matter must be remanded to the DRB for additional fact finding including, if it deems necessary, another hearing, and the rendering of specific findings of fact that are supported by substantial evidence in its record, so as to provide a proper foundation for the legal determinations the DRB chooses to thereafter announce.  It will be for the DRB to determine whether sufficient evidence is present in the post-remand record from which it can draft adequate findings and conclusions, or whether it wishes to reopen the hearing and take additional evidence.  We trust that the DRB will then produce a decision that makes "a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached."  In re Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 10, 2004) (unpublished mem.) (citing New England P'ship v. Rutland City Sch. Dist., 173 Vt. 69, 74 (2001)).  The DRB is not constrained to issue a decision after remand that mirrors the legal conclusions from its prior decision.

We also encourage the DRB to fully explain in its decision what evidence it found persuasive and reliable, and "[w]here the evidence conflicts, . . . state clearly what evidence it credits and why."  Jensvold v. Town & Country Motors, Inc., 162 Vt. 580, 585 (1994) (citing

---

[7] Because we conclude that we must remand this appeal to the DRB, we need not consider the non-record materials proffered by Applicant; Applicant's motion requesting we consider those materials is therefore denied.

Corrette v. Town of St. Johnsbury, 140 Vt. 315, 316 (1981)). To provide for meaningful review in the event of an appeal, "[i]t is important for [us] to know how the [DRB] weighed the facts and blended the standards to arrive at the conclusion. In other words, we need to review the explanation as well as the found facts to determine if the application of the [legal] criteria to the facts is sound." Nickerson v. Nickerson, 158 Vt. 85, 89 (1992), quoted in Simendinger v. City of Barre, 171 Vt. 648, 655 (2001) (Katz, Supr. J., concurring and dissenting).

## Conclusion

For all the reasons more fully discussed above, we **GRANT** Applicant's motion for summary judgment and hereby **VACATE** the September 8, 2008 Decision of the DRB, which denied Applicant site plan and conditional use approval to redevelop the horse barn building on Grist Mill Island. In so doing, we have **GRANTED** Applicant's motion to complete the record, so as to include the entire Stantec Report as part of the official record.

Lastly, we **DENY** Applicant's motion to disallow remand as a remedy, **DENY** Applicant's motion to consider non-record materials as part of that motion, and hereby **REMAND** the application to the City of Vergennes DRB for whatever action it deems appropriate to conform to this Decision and the legal precedent cited herein.

A Judgment Order accompanies this Decision. This concludes the proceedings before this Court in this Docket.[8]

Done at Berlin, Vermont, this 13th day of April 2010.

_____
Thomas S. Durkin, Environmental Judge

---

[8] A related Docket remains pending before the Court: In re Grist Mill Horse Barn Redevelopment (Plan 2), No. 89-5-09 Vtec. Applicant filed that appeal with this Court after the DRB denied a subsequent site plan and conditional use application. Pursuant to the parties' Joint Stipulation and Scheduling Order of June 24, 2009, the parties shall now complete any necessary discovery and pleadings in that Docket.