2010 VT 85

**Crawford W. GREGORY v. POULIN AUTO SALES, INC.**

[9 A.3d 679]

No. 09-147

¶ 1. September 1, 2010. Defendant Poulin Auto Sales appeals a trial court decision granting summary judgment in favor of plaintiff, Crawford Gregory. Poulin contends that the trial court erred in finding it strictly liable under 23 V.S.A. § 2093 for selling Gregory a salvaged car without disclosing that fact to him. Poulin additionally contests the court's finding that it made false representations in violation of the Vermont Consumer Fraud Act (VCFA). We affirm the court's ruling with respect to Poulin's liability for selling a salvaged car without notice and remand for a reconsideration of damages and further proceedings on the VCFA claim.

¶ 2. The facts of the case are largely uncontested. Poulin operates a car dealership that buys and sells automobiles to consumers and also purchases vehicles wholesale at auctions. Cars purchased through auction are generally invest-ments, which Poulin holds for a period of time and then sells at a subsequent auction for a higher price. It is this facet of Poulin's business that gave rise to this case. In September 2006, Poulin purchased a 2001 Audi A4 for $4800 at auction, receiving a clean title and odometer disclosure form, as required by law. Poulin towed the car back to its lot and, after cleaning it, left it for four months without ever inspecting it or performing any maintenance. Poulin brought it back to auction in January 2007 and sold it to Gregory for $6100. Like Poulin, Gregory received a title and odometer disclosure form signed by Poulin's agent when he purchased the car.

¶ 3. After buying the car, Gregory quickly discovered through an Internet search that the car was actually a salvaged and rebuilt vehicle with an inaccurate odometer reading and nonfunctioning airbags. The car had been reconstructed after it was declared a "total loss" by an insurance company, thus fitting the statutory definition of a "salvaged motor vehicle." 23 V.S.A. § 2001(13). He contacted Poulin, and Poulin refused to refund him the purchase price for the car or accept its return. Poulin claimed it had no knowledge of the defects in the title of the car or the odometer reading — it had merely owned the car without inspecting it — and it recommended that Gregory's best recourse was to track down the previously titled owner.

¶ 4. The previous owner was a third party who had purchased the car from a dealer as a rebuilt vehicle in "as is" condition in 2002 and received a salvage title with the actual mileage on the car "unknown." A few months after this purchase, the Vermont Department of Motor Vehicles (DMV) mistakenly issued this owner a clean title when a lien was placed on the car. When he eventually sold the car to Poulin at the auction, the third party failed to disclose this earlier history when signing the bill of sale and odometer

disclosure statement; however, at his deposition he said he informed the auctioneers that the car was rebuilt. He apparently never spoke directly to Poulin's representative.

¶ 5. Unsatisfied with Poulin's refusal to refund him, Gregory filed suit claiming that Poulin had unlawfully sold him a salvaged car without notification and had violated the VCFA by engaging in unfair and deceptive trade acts and advertising when it failed to disclose the inaccurate odometer statement, the salvaged title, and the inoperability of the car's two airbags. The trial court granted Gregory's subsequent motion for summary judgment in a hand-written entry, ordering a hearing on damages and stating:

1. Whether Poulin got "clean title" from [the third party], and whether that was inaccurate (or not), is immaterial under 23 V.S.A. § 2093 and *Jensvold[ v. Town & Country Motors, Inc.,* 162 Vt. 580, 649 A.2d 1037 (1994)]; strict liability for refund is imposed based on status of vehicle itself, as salvaged or rebuilt, and not what the title shows. Dealer can protect itself by doing its own [Internet] search, or use other industry alternatives, before reselling vehicle.

2. Under *Peabody v. P.J.'s Auto Village[, Inc.,* 153 Vt. 55, 569 A.2d 460 (1989)], remedy under consumer fraud law is well-established.

3. Set for final court hearing as to any "exemplary damages," and for assessment of attorney's fees. 9 V.S.A. § 2461(b).

¶ 6. At the damages hearing, Poulin attempted to present evidence contesting the grant of summary judgment, but the trial court, with a different judge presiding, declined this apparent attempt to reconsider the judgment and considered only the issue of damages. Gregory received judgment for over $14,000, including the purchase price of the car, interest, and court and attorney's fees. The court denied his request for exemplary damages under the VCFA, finding Poulin's actions failed to exhibit "actual knowledge of the defects" or the necessary "intent to defraud" required to award such damages. There was nothing in the order requiring Gregory to return the car to Poulin. Poulin later filed a motion for relief from judgment requesting either a return of the vehicle or "credit" to Poulin based on the actual value of the car as a salvaged vehicle. The court denied the motion because the issue had not been previously raised. Poulin appealed.

¶ 7. On appeal, Poulin raises two claims of error. First, it claims that the court erred in finding a violation of the salvage title law, 23 V.S.A. § 2093, because Poulin had no knowledge that the car it sold was salvaged. Poulin contends that the law should have a narrow scope and require the seller to have knowledge of the title defect before liability can attach. Additionally, Poulin argues that the law is penal in nature and thus should be construed narrowly. Even if this Court finds Poulin liable, it requests an order requiring Gregory to return the car. Its second claim is that the trial court erred in finding a violation of the VCFA because it made no findings to support its order, and Poulin never actually perpetrated a deceptive act because it had no knowledge of the defects in the vehicle.

¶ 8. We review a motion for summary judgment de novo and apply the same legal standard as the trial court. *Madowitz v. Woods at Killington Owners' Ass'n,* 2010 VT 37, ¶ 9, 188 Vt. 197, 6 A.3d 1117. We will affirm summary judgment when the record clearly indicates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(c); *Madowitz,* 2010 VT 37, ¶ 9.

¶ 9. There is no question that Poulin sold Gregory a salvaged automobile with an inaccurate title. Section 2093(b) of Title 23, part of the Salvage Title Act, unequivocally states:

> Any person who sells, trades or offers for sale or trade any interest in a salvaged, salvaged and rebuilt, or totaled vehicle shall disclose the fact that the vehicle has been salvaged, salvaged and rebuilt or totaled to a prospective purchaser both orally and in writing before a sale, trade or transfer is made. Written disclosure that the vehicle has been salvaged, salvaged and rebuilt or totaled, in addition to being disclosed on the certificate of title as required by this subchapter, shall also be conspicuously disclosed on any bill of sale, transfer, purchase or other agreement.

Failure to comply with this notice requirement "shall result in the seller being required, at the option of the buyer, to refund to the buyer the purchase price, including taxes, license fees and similar governmental charges." *Id.* § 2093(c).

¶ 10. When interpreting a statute, we look to implement the intent of the Legislature and do so by first looking to the plain language of the law. *Cyr v. McDermott's, Inc.*, 2010 VT 19, ¶ 15, 187 Vt. 392, 996 A.2d 709. We have held in the past that the language of § 2093 imposes strict liability upon the seller to refund the buyer when the seller has failed to give adequate notice. *Jensvold*, 162 Vt. at 583, 649 A.2d at 1040. Poulin argues that strict liability should not attach when the seller is unaware of the defect in the title or the actual condition of the car. This position fails to grasp the purpose of the statute and the nature of strict liability. By its terms, the statute is meant to protect would-be buyers by requiring the owner to submit the vehicle to a substantial inspection before it can be registered or receive a title, 23 V.S.A. § 2093(a) (detailing when inspection required and specifying inspection of new "major component parts used to rebuild the vehicle" and possible assignment of new vehicle identification number), and by providing notice to any buyer that the vehicle has had significant repair history via a branded title. *Id.* § 2093(b). The statute grants the buyer a clear remedy if the seller withholds such notice. *Id.* § 2093(c). Nothing in the statute suggests protection for an innocent seller nor requires that the seller be aware of any defect. The fact that the remedy for violation merely requires a seller to refund the purchase price and does not permit any damages reinforces this conclusion.

¶ 11. Poulin's argument that the car it sold does not fall under the purview of this statute because the DMV had failed to issue a salvage title is also without merit. While the statute lays out facets of the inspection the DMV must undertake before issuing a salvage title, it places any liability and all responsibility squarely on the seller: caveat venditor. The question is the condition of the vehicle and the demand for a refund, not the status of the title. See *Jensvold*, 162 Vt. at 582-84, 649 A.2d at 1039-40 (permitting recovery of purchase price even when DMV had issued clean title to rebuilt vehicle).

¶ 12. Our holding in *Jensvold* confirms this interpretation of § 2093. In *Jensvold*, though the seller knew the car it was selling had been rebuilt but still had a clean title, it failed to properly inform the buyers and refused to accept return of the car. We held that the remedy in § 2093 took effect when the buyers "notif[ied] the seller that the buyers did not want the vehicle" and the seller refused to take it back. 162 Vt. at 584, 649 A.2d at 1040. This offer alone was sufficient to require action under § 2093 because the law "does not . . . condition a buyer's remedy on

anything more than an implied offer to return the vehicle for a refund of the purchase price." *Id.* Contrary to Poulin's argument, the holding in *Jensvold* and the application of § 2093 are not predicated on the seller's knowledge of any title defects. Indeed, this is the essence of strict liability. See *Rothberg v. Olenik*, 128 Vt. 295, 297, 262 A.2d 461, 463 (1970) (recognizing in context of personal injury that when "strict liability is imposed upon the maker or seller of the product[,] [r]ecovery of damages does not depend upon proof of negligence or knowledge of the defect" (quotation omitted)).

¶ 13. Poulin suggests that such strict liability should require a finding of some "nexus of responsibility" by likening § 2093 to liability for punitive damages in a wrongful death action under the Dram Shop Act. See *Clymer v. Webster*, 156 Vt. 614, 631-34, 596 A.2d 905, 915-17 (1991) (reversing trial court's exclusion of claim for punitive damages). The analysis is strained and unpersuasive because *Clymer* dealt with whether punitive damages would be *permitted* under the Dram Shop Act. Exemplary damages were specifically denied in this case, and the Dram Shop Act involves a causal element lacking from § 2093. Cf. 7 V.S.A. § 501(a) (permitting action for damages "against any person or persons who have caused in whole or in part such intoxication by selling or furnishing intoxicating liquor").

¶ 14. Poulin also complains that § 2093 is, in effect, a penal statute and should be strictly construed. Poulin highlights a later section of the same subchapter, which states: "A person who violates any provision of this subchapter [including § 2093] . . . shall be fined not more than $1,000.00 or imprisoned for not more than one year, or both" as support for its contention. 23 V.S.A. § 2095(b). This line of argument fails. Even were we to consider § 2093 a penal statute because of the possibility of fines or imprisonment under § 2095 — penalties not at issue in this case — the rule of lenity for which Poulin advocates is inapplicable for two reasons. First, "the rule of lenity requires us to resolve any ambiguity in favor of the defendant." *State v. LaBounty*, 2005 VT 124, ¶ 4, 179 Vt. 199, 892 A.2d 203. We have found no ambiguity in the language and remedy of § 2093. Second, "[p]enal statutes are generally to be strictly construed against the State." *In re S.M.*, 2003 VT 41, ¶ 13, 175 Vt. 524, 824 A.2d 593 (mem.). As there is no criminal penalty or prosecution in this case and the State is not a party, we see no reason to apply the rule.

¶ 15. Because Poulin does not contest the fact that Gregory offered to return the vehicle to them,[*] we uphold the trial court's finding of liability under § 2093; however, we pause to address the question of damages. In *Jensvold*, we remanded the case on the question of damages because one of the buyers of the vehicle in question had used it as a personal car following the seller's refusal to accept its return. We held that the seller "is entitled to a setoff equivalent to the value of the use of the vehicle under general equitable principles even though § 2093 is silent on the subject." *Jensvold*, 162 Vt. at 584, 649 A.2d at 1041. Gregory's continued possession of this car would effectively allow him to gain a windfall profit if Poulin were forced to refund him the purchase price and not receive the car in return. Accordingly, we hold that, at

---

[*] On appeal, Poulin claims Gregory's offer to return the car was part of a demand that included over $3000 in attorney's fees and thus was not simply an offer to return the vehicle. Contrary to this contention, the trial court expressly found that "Poulin refused to take the car back," and Poulin never contested Gregory's statement in his motion for summary judgment that Poulin had refused to refund the purchase price or accept return of the vehicle when Gregory originally called.

Gregory's election, either Poulin must reimburse him the purchase price of the car — along with taxes and fees as laid out in § 2093(c) — in exchange for the return of the car, or Gregory can keep the car, and Poulin must prove the actual value of the car as a salvaged vehicle and reimburse him the difference between his purchase price and the newly established value. See *Jensvold*, 162 Vt. at 585, 649 A.2d at 1041 (noting that "burden of proof is on the seller to prove damages as a result of the use").

¶ 16. Turning to Poulin's liability under the VCFA, we must remand the case for some finding of a violation of the law. The trial court's ruling on this point — "Under *Peabody v. P.J.'s Auto Village*, remedy under consumer fraud law is well-established." — is patently unclear and simply not a legal finding nor a conclusion of law. It is insufficient for us to review. See *Bonanno v. Bonanno*, 148 Vt. 248, 251, 531 A.2d 602, 604 (1987) ("On review, the trial court's findings will be deemed insufficient when we are left to speculate as to the basis of the trial court's decision."). Though the trial judge who sat on the damages hearing confirmed the liability ruling, she also expressed some confusion on this point, noting that the "ruling did not specifically address what statutory violations [the trial judge] found were proved." She presumed that because the trial judge "checked 'granted' on the [motion reaction] form[,] . . . the court interprets the ruling as granting the motion in its entirety." Absent any clear finding of a violation — especially where there was no hearing on the summary judgment motion and precious little evidence in the record — we remand the case to the trial court for a more complete finding and conclusion enabling our review.

*Affirmed as to defendant's liability under 23 V.S.A. § 2093. Reversed and remanded for determination of damages under 23 V.S.A. § 2093 and further findings on liability under the Vermont Consumer Fraud Act.*