2013 VT 70

## State of Vermont v. Marek L. Tuma

[79 A.3d 883]

No. 12-365

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed August 9, 2013

*Steven M. Brown*, Windham County Deputy State's Attorney, Brattleboro, and *Greg Nagurney*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellant.

*James A. Valente* of *Costello Valente & Gentry, P.C.*, Brattleboro, for Defendant-Appellee.

¶ 1. **Dooley, J.** The State of Vermont appeals the suppression of evidence obtained in the stop of defendant Marek Tuma's vehicle

that led to his arrest and charge of driving under the influence (DUI), arguing that the fact that one side of defendant's front license plate was one to two inches below the other gave rise to reasonable suspicion that he was committing a traffic violation. We affirm.

¶ 2. The facts leading to the stop of defendant's vehicle are not in dispute. On November 13, 2011, a police officer observed defendant driving on Putney Road in Brattleboro. The officer observed, in his own words, that "the front plate on the passenger side of that plate was approximately one to two inches lower than the driver's side of the plate." He initiated a motor vehicle stop based on this observation because he believed that the position of the license plate constituted a violation of 23 V.S.A. § 511, which mandates that license plates on cars "shall be kept horizontal." He confirmed during the motion hearing that this was the sole reason that he initiated the stop.

¶ 3. Based on his interaction with defendant, the officer suspected that defendant had operated the car under the influence of alcohol, and requested that defendant perform a number of sobriety tests, some of which defendant failed. Defendant was arrested and charged with DUI-2. The State moved to amend the information to charge a DUI-3 and added a DUI-3-Refusal charge. The trial court found probable cause on the first count but not on the DUI-3-Refusal.

¶ 4. Defendant filed a motion to suppress, arguing that having one edge of his license plate slightly below the other did not violate Vermont law, and there was, therefore, no reasonable suspicion that would have permitted the officer to stop his vehicle. The trial court orally granted the motion to suppress, ruling that the "one to two inches off level" was "horizontal," for the purposes of the statute. It also noted, however, that "the problem here is not that the officer wasn't acting in good faith" — it just found that the officer was incorrect about the law. The State moved for permission to appeal, which the court granted.

¶ 5. As there are no disputed facts related to the motion to suppress, we review only the trial court's legal analysis. See *State v. Edmonds*, 2012 VT 81, ¶ 5, 192 Vt. 400, 58 A.3d 961. Our review is de novo. *Id.*

¶ 6. The relevant statute reads:

A motor vehicle operated on any highway shall have displayed in a conspicuous place either one or two num-

ber plates as the commissioner of motor vehicles may require. . . . If two are furnished, one shall be securely attached to the rear and one to the front of the vehicle. The number plates shall be kept entirely unobscured, the numerals and the letters thereon shall be plainly legible at all times. They *shall be kept horizontal*, shall be so fastened as not to swing . . . . A person shall not operate a motor vehicle unless number plates are displayed as provided in this section.

23 V.S.A. § 511 (emphasis added).

¶ 7. In construing a statute, we "aim to implement the intent of the Legislature and will presume the Legislature intended the plain, ordinary meaning of the statute." *Pease v. Windsor Dev. Review Bd.*, 2011 VT 103, ¶ 17, 190 Vt. 639, 35 A.3d 1019 (mem.) (quotation omitted). The State argues on appeal that § 511 is plain on its face that *any* difference in level between the two sides of the license plates means that the license place is not "horizontal" for the purpose of this statute. Defendant argues that such cannot have been the Legislature's intent, and even if it were, the language of the statute is ambiguous and should therefore be construed in his favor because of the rule of lenity.

¶ 8. ▮ We note, first of all, the principle that even a minor traffic infraction can be the basis of a traffic stop. See *State v. Marshall*, 2010 VT 81, ¶ 5, 188 Vt. 640, 8 A.3d 1086 (mem.) ("[I]f a violation has occurred — even a simple traffic violation — it is reasonable for the police to stop a driver."). In the past, "we have found stops justified where officers had reason only to suspect that a noncriminal motor vehicle code violation occurred." *Id.* ¶ 6. Moreover, even a violation of a statute that "is often violated and impossible to comply with" may lead to reasonable suspicion that justifies a stop, because the impossibility of compliance is "ultimately for the Legislature to address, not this Court." *State v. Fletcher*, 2010 VT 27, ¶ 12, 187 Vt. 632, 996 A.2d 213 (mem.). At the same time, however, we do not construe statutes in such a way as to lead to "absurd or irrational results." *State v. Rice*, 145 Vt. 25, 34, 483 A.2d 248, 253 (1984).

¶ 9. Both sides cite different dictionary definitions that they have found for the word "horizontal," some of which define it as "level" and others of which do not. While we understand this line of argument, given that the trial court based its ruling in part on

its conclusion that the term "horizontal" did not mean "level," we do not believe that the answer to this question will come by combing through dictionaries for definitions of the word "horizontal." Rather, we agree with a Michigan federal district court, which, faced with an argument about how flat an axis could be while still being defined as "horizontal," found that "dictionary definitions do not conclusively favor either side's view of the plain and ordinary meaning of the term horizontal." *Whirlpool Corp. v. LG Elecs., Inc.*, 423 F. Supp. 2d 730, 738 (W.D. Mich. 2004). Nor do we wish to enter into the fray that arose at the motion hearing regarding the relationship between a horizontal license plate and a potentially nonhorizontal bumper.[1]

¶ 10. Perhaps not too surprisingly, precedent from other states on this precise issue is sparse. The State cites one Nebraska case, *State v. Hyland*, in which the court determined that a license plate hanging at either 45 degrees or vertically — depending on whose version of the story was correct — was not "fully upright" for the purposes of that state's license plate statute. 769 N.W.2d 781, 784 (Neb. Ct. App. 2009). This case provides no particular help to us. The wording of the statute was different, and even the defendant's own estimate of the angle was a rather dramatic tilt of 45 degrees.

¶ 11. With no satisfying answer coming from the word itself or from other states, we must find another way to interpret the word "horizontal" in a nonabsurd manner. The State admitted at oral argument that a difference in height of "one-sixteenth of an inch" would be impossible to identify as not horizontal, and that the

---

[1] Consider, for example, this exchange in the motion hearing:

THE COURT: So what are you looking at when you're deciding it's not horizontal or is? . . . .

THE WITNESS [The officer]: Depends on the case, your honor. If I was looking at a vehicle that had noticeable damage to the front bumper, and that appeared askew, I would assume that the license plate would be askew, because there was damage to that front bumper.

THE COURT: And so it would or would not be horizontal, then, in your mind?

THE WITNESS: In that particular case, the license plate would not be horizontal because it would be — if it were firmly attached to the bumper, as it should be with the two screws on each side, and the bumper was the item that was not level, then the license plate itself would be firmly attached. And if the bumper was not damaged, would be level, I guess.

question was "one of degree." Defense counsel, for his part, proposed that an appropriate reading of not horizontal might be: "when it's closer to diagonal than it is to horizontal," — that is, a tilt of up to 22.5 degrees would be permissible. While we agree that that might be a reasonable interpretation of the statute, we decline to make such a specific mathematical ruling.

¶ 12. Rather, to answer this question, we must consider the intent of the Legislature in enacting this statute. This requires no delving into the annals of the Vermont Legislature. See 23 V.S.A. § 304(b)(2)(B) ("[T]he primary purpose of motor vehicle number plates is vehicle identification."); see also *Martin v. State*, 2003 VT 14, ¶ 43, 175 Vt. 80, 819 A.2d 742 (Johnson, J., dissenting) ("[T]he stated goal of Vermont in issuing . . . license plates . . . is to aid in vehicle identification." (citing *Perry v. McDonald*, 280 F.3d 159, 167 (2d Cir. 2001))). Naturally enough, then, all of the mandates in § 511 governing the manner of display of license plates are related to visibility and readability of the plate: the license plate must be unobscured, legible, and "so fastened as not to swing" — swinging, of course, makes the license plate harder to read.[2]

¶ 13. Given this understanding, we have previously analyzed license-plate statutes as related to visibility or readability. Vermont cases involving § 511 to this date — most of which have been nonprecedential three-justice cases, but which nonetheless demonstrate the usual application of the statute to motor-vehicle stops — have been cases where the improper placement or display of license plates has decreased visibility, and correspondingly made the vehicle more difficult to identify.[3] See, e.g., *State v. Bowley*, No. 2007-045, 2007 WL 5313370, at *1 (Vt. Dec. 19, 2007) (unpub. mem.), https://www.vermontjudiciary.org/LC/unpublished eo.aspx (not reaching the question of whether a license plate on the front dashboard satisfies § 511, but finding officer's stop

---

[2] As a California court put it in an unpublished opinion: "[T]he ultimate objective of the . . . statutory requirements [regarding license plate display] is to have license plates in positions on a vehicle from which they can be easily read." *People v. Slocum*, No. H032818, 2009 WL 1101242, at *3 (Santa Clara Cnty. Super. Ct. April 24, 2009). Although the California statute did not involve a requirement that a plate be horizontal, the court inferred it from a requirement that the license plate by securely fastened, remarking, "Obviously a front license plate canted at an angle over 45 degrees from horizontal, while more readable than one that is upside down, is not as readable as one that is upright." *Id.*

[3] As the State aptly pointed out at oral argument, this is not a "hotly-litigated" statute.

justified because "officer observed that defendant's plate was not displayed on the front bumper of defendant's car where the officer would routinely have checked"); *State v. Richardson*, No. 2001-064, 2002 WL 34423170, at *2 (Vt. June 27, 2002) (unpub. mem.), https://www.vermontjudiciary.org/LC/unpublishedeo.aspx (officer's observation that the "defendant's rear license plate was totally obscured by snow, in violation of 23 V.S.A. § 511" was "reasonable basis to effectuate a stop"); *State v. Langlois*, 164 Vt. 173, 175, 667 A.2d 46, 47 (1995) ("[T]he officer was justified in stopping defendant's vehicle because the front license plate was not visible."). In a case involving 23 V.S.A. § 1248(b), which mandates that license plate lights allow the rear license plate to be seen from fifty feet away, we went so far as to find a stop unjustified where, although one of the lights that illuminated the defendant's rear license plate was out, "the State presented no evidence that the numerals or letters on defendant's rear plate were not illuminated to the degree required by § 1248." *State v. Lussier*, 171 Vt. 19, 37, 757 A.2d 1017, 1029 (2000); see also *State v. Katz*, No. 2007-173, 2008 WL 2815924, at *1-2 (Vt. Feb. 6, 2008) (unpub. mem.), https://www.vermontjudiciary.org/LC/unpublishedeo.aspx (finding a stop unjustified under § 1248(b) where "officer presented no testimony [in a civil suspension hearing], and the State adduced no other evidence, showing that he was within fifty feet from the rear of the vehicle when he allegedly observed that the rear plate was not illuminated").

¶ 14. ■ Consequently, we find a proper reading of the statute to be that a license plate ceases to be "horizontal" when the angle of the license makes it difficult for a person with normal vision to read it. We decline at this point to define what that angle is, although we suspect that it might be something akin to defense counsel's proposal of "closer to diagonal than it is to horizontal." Of course, evidence of an observer's ability to read a license plate may inform an interpretation in a specific case.

¶ 15. ■ As for the case at hand, the State makes no argument that the license plate was not legible, and the photo that is part of the record and that both parties agree is a representation of the license plate as it was fastened on the day of the stop, further belies any such assertion. Given these facts, we agree with defense counsel that although there are cases where the angle of a license

plate would be enough to justify a stop based on nonhorizontality, this is not that case.

*Affirmed.*