2015 VT 46

## State of Vermont v. Robert K. Hurley

[117 A.3d 433]

No. 14-032

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Hayes, Supr. J., Specially Assigned**

Opinion Filed March 6, 2015

---

*Alexander Burke*, Bennington County Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*David Scherr* of *Burke Law, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Robinson, J.** This case calls upon us to decide whether 23 V.S.A. § 1125 prohibits the hanging of any item on the inside of a windshield, including a pine-tree-shaped air freshener, without regard to whether the item materially obstructs the driver's vision. Defendant appeals the denial of his motion to suppress the fruits of a traffic stop based on the presence of an air freshener hanging from his rearview mirror, and his ensuing conviction. We conclude that the applicable statute does not per se prohibit the hanging of any item on the inside of a windshield without regard to whether it obstructs the driver's vision. However, because the officer's mistake of law on this point was objectively reasonable and thus justified the stop, we affirm the judgment below.

¶ 2. In June 2013, defendant was driving through downtown Bennington when he was stopped by a police officer. As a result of observations the officer made in connection with the stop, and ensuing events, defendant was charged with driving over the legal limit and driving under the influence of alcohol in violation of 23 V.S.A. § 1201(a)(1) and (2). Defendant moved to suppress and dismiss.

¶ 3. The facts underlying the suppression motion are undisputed. The police officer stopped the defendant after the officer saw a pine-tree-shaped air freshener hanging from the defendant's

rearview mirror. The State argued that hanging an air freshener from the rearview mirror violates 23 V.S.A. § 1125. The defendant argued that hanging an air freshener from the rearview mirror does not violate that statute if the item does not materially obstruct the driver's vision. The State did not allege that the officer believed that the air freshener obstructed defendant's vision. At the subsequent bench trial, the officer testified that a driver of the car could "observe the road directly ahead," notwithstanding the presence of the air freshener.

¶ 4. The trial court denied the suppression motion, concluding that the statute unambiguously prohibits the hanging of all objects from rearview mirrors, except those specifically exempted by the statute. Defendant was subsequently convicted at a bench trial and now appeals his conviction on the ground that the trial court erred in denying his suppression motion.

¶ 5. ■ "A police officer is authorized to make an investigatory stop based on a reasonable and articulable suspicion of criminal activity, or of a traffic violation." *State v. Davis*, 2007 VT 71, ¶ 7, 182 Vt. 573, 933 A.2d 224 (mem.) (quotation omitted). "[E]ven a minor traffic infraction can be the basis of a traffic stop. In the past, we have found stops justified where officers had reason only to suspect that a noncriminal motor vehicle code violation occurred . . . even a violation of a statute that is often violated . . . ." *State v. Tuma*, 2013 VT 70, ¶ 8, 194 Vt. 345, 79 A.3d 883 (citation and quotations omitted).

¶ 6. The statute on which the officer based the traffic stop in this case is entitled "Obstructing windshields," and provides that:

> No person shall paste, stick, or paint advertising matter or other things on or over any transparent part of a motor vehicle windshield, vent windows, or side windows located immediately to the left and right of the operator, nor hang any object, other than a rear view mirror, in back of the windshield . . . .

23 V.S.A. § 1125(a). The statute includes various exceptions identifying specific locations on the windshield where small stickers are allowed, authorizing the commissioner of motor vehicles to specify the location of any sticker required by governmental regulation, and creating limited exceptions for emergency responders, licensed automobile dealers, and individuals with medical

conditions requiring that they be shielded from the rays of the sun. *Id.* § 1125(a)(1)-(6). The question for us on appeal is whether this statute prohibits all objects hanging from a rearview mirror, or only those that materially obstruct the driver's vision.[1]

¶ 7. Vermont's trial courts are split on the question. The Chittenden Superior Court granted a motion to suppress the fruits of a traffic stop based on a small air freshener hanging from the rearview mirror that neither obstructed the windshield nor affected the operation of the vehicle. *State v. Soucy*, No. 309-1-13 Cncr, slip op. at 3-6 (Vt. Super. Ct. Mar. 14, 2013). The court reasoned that the statute in question is expressly directed at objects that obstruct the windshield, and that the State's interpretation suggested an absolute prohibition against hanging any items behind the windshield, including sun visors, swing-down compartments for sunglasses, and rosary beads or other objects dangling from car mirrors. *Id.* at 5. The court concluded the Legislature did not intend for the statute to proscribe such a broad range of common practices without regard to whether a driver's vision is actually obstructed. *Id.*; see also *State v. Williams*, No. 4631-11-12 Cncr, slip op. at 3 (Vt. Super. Ct. June 13, 2013) (following *Soucy* in concluding that object hanging from mirror did not justify traffic stop). On the other hand, the Rutland Superior Court has concluded that the statute applied to the hanging of any object, even if nonobstructive. *State v. McPhee*, No. 519-3-10 Rdcr, slip op. at 2-3 (Vt. Super. Ct. June 21, 2010) (rejecting argument that statute on its face addresses only hanging of objects from the windshield itself, rather than from rearview mirror).[2]

¶ 8. In this appeal, defendant argues that an interpretation of this statute that prohibits all hanging objects behind a windshield, rather than those that actually obstruct a driver's view, would be absurdly overbroad, and would impermissibly preempt federal law

---

[1] We express no opinion as to whether the air freshener in this case likely obstructed defendant's clear view of the road. In connection with defendant's suppression motion, the State argued that the statute broadly prohibits any objects hanging from the rear-view mirror, and did not proffer any evidence that the officer reasonably believed that the air freshener that he saw materially obstructed the driver's view. See *infra*, ¶ 18 & nn. 5-6.

[2] See also *State v. Barcelos*, No. 718-7-12 Bncr, slip op. at 2-3 (Vt. Super. Ct. Oct. 2, 2012) (rejecting claim that 23 V.S.A. § 1125(a), as applied to defendant with air fresheners hanging from rearview mirror, is void for vagueness).

by disallowing sun visors, which are required by federal regulations. The State argues that the plain language of the statute prohibits the hanging of *any* object from the mirror. The interpretation of a statute is a question of law, which we review de novo. *State v. Therrien*, 2011 VT 120, ¶ 9, 191 Vt. 24, 38 A.3d 1129.

¶ 9. Our objective in statutory interpretation is to construe and effectuate the legislative intent behind a statute. *In re Carroll*, 2007 VT 19, ¶ 9, 181 Vt. 383, 925 A.2d 990. "We will enforce the plain meaning of the statutory language where the Legislature's intent is evident from it," but where not evident from the plain meaning, we will construe intent from consideration of "the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law." *Id.* (quotation omitted).

¶ 10. We conclude that the State's interpretation is overbroad, and that a violation of 23 V.S.A. § 1125(a) must be linked to an obstruction of the driver's vision. We reach this conclusion for a host of reasons, which we address below.

¶ 11. First and foremost, the State's interpretation is not supported by the language of the statute as a whole, understood in light of the statute's intent. We have long held that the title of a chapter, subchapter, or section, as well as the statute's purpose, may be considered in interpreting a statute. *Doubleday v. Town of Stockbridge*, 109 Vt. 167, 172, 194 A. 462, 464 (1937) (stating that meaning of statute "may be ascertained by considering it in the light of all of its provisions, the object to be accomplished by its passage, its title, pre-existing legislation on the same subject and other relevant circumstances"); *Weale v. Lund*, 2006 VT 66, ¶ 8, 180 Vt. 551, 904 A.2d 1191 (mem.) ("We consider the title in construing a statute."); *State v. Lynch*, 137 Vt. 607, 612-13, 409 A.2d 1001, 1005 (1979) ("[T]his Court must look to the intent of the legislature where it can be ascertained. This requires the Court to consider not only the letter of the statute, but, more importantly, its reason and spirit." (citations omitted)).

¶ 12. Since its inception, the statute in question has been expressly captioned "Obstructing windshields."[3] Although the word "obstruction" is never mentioned in the text of the section, the

---

[3] The text of 23 V.S.A. § 1125 remains substantially unaltered from its original wording: "A person shall not . . . hang any object other than a rear view mirror in back of the windshield of a motor vehicle." 1971, No. 258 (Adj. Sess.), § 3.

aim of the statute is to mandate that drivers have clear and unobstructed views of the road in front of them. The placement of the statute affirms the commonsense inference that its purpose is to promote public safety. The obstructing-windshields statute is located in the chapter entitled "Operation of Vehicles" and the subchapter entitled "Miscellaneous Rules." The purpose of the operation-of-vehicles statute — its "reason and spirit" — is to "render the operation of motor vehicles safer and lessen motor vehicle accidents and resulting injuries or fatalities." 23 V.S.A. § 1001(a)(4) (describing scope of authority of commissioner of Department of Motor Vehicles to make regulations). Altogether, the purpose of Title 23 as a whole is to promote safety on public highways, and the goal of § 1125 is to promote that purpose by prohibiting the obstruction of a driver's vision. The broad interpretation of § 1125 urged by the State — i.e., that any hanging object would violate the statute without regard to whether it obstructs the driver's vision — extends far beyond the Legislature's purpose in enacting this statute.

¶ 13. ▇ Second, we construe statutes to avoid unreasonable consequences that are at odds with the Legislature's apparent intent. *Delta Psi Fraternity v. City of Burlington*, 2008 VT 129, ¶ 7, 185 Vt. 129, 969 A.2d 54 ("[I]f the literal meaning of the words is inconsistent with legislative intent, the intent must prevail. Such inconsistency occurs if applying the precise wording of a statute produces results which are manifestly unjust, absurd, unreasonable or unintended, or conflicts with other expressions of legislative intent." (alteration and quotation omitted)).

¶ 14. The State's construction of the statute — that it prohibits *any* object hung from any point behind the windshield — would render conduct that is ubiquitous, and does not necessarily jeopardize anyone's safety, an infraction. Courts have recognized that "[m]any motorists in the United States drive with objects hanging from the rearview mirrors of their vehicles." *Gordon v. State*, 901 So. 2d 399, 402 & n.4 (Fla. Dist. Ct. App. 2005). Reported cases reflect a wide variety of such objects, including air

---

Stylistic edits have been made over time, and exceptions have been added. E.g., 2005, No. 89 (Adj. Sess.), § 1; 2001, No. 112 (Adj. Sess.), § 1. Because the statute is substantially unchanged since its enactment in 1972, and given the sparse legislative record relating to that bill — part of a general revision of the motor vehicle code — the legislative history shines no light on the intent of the Legislature with respect to the specific question before us.

fresheners, spherical crystals, parking placards, medical-alert cards, dog tags, beads, crosses, crucifixes, and, of course, fuzzy dice. *Id.*; accord *Commonwealth v. Brazeau*, 831 N.E.2d 372, 374 (Mass. App. Ct. 2005) ("[W]e take judicial notice of the fact that objects such as air fresheners, graduation tassels, and religious medals commonly are hung from the rearview mirrors of motor vehicles."). The State's interpretation would make it a violation to drive with a garage-door opener clipped to and extending slightly beyond the sun visor, a ceiling-mounted speaker for hands-free mobile-phone use, or an unobtrusive parking permit hung from one's rearview mirror. As the Chittenden Superior Court pointed out, it would prohibit driving while the small sunglasses compartment in the ceiling of many cars is open. *Soucy*, No. 309-1-13 Cncr, slip op. at 5. We find it hard to believe that the Legislature intended § 1125 to have such broad application.[4]

¶ 15. We recently examined another DUI charge arising from a traffic stop based on a hypertechnical reading of a minor motor vehicle statute in *State v. Tuma*, and we find the reasoning of that case supports our conclusion here. In *Tuma*, an officer observed that the passenger side of the front license plate was approximately one to two inches lower than the driver's side of the plate. 2013 VT 70, ¶¶ 1-3. Although "the State ma[de] no argument that the license plate was not legible," the officer made a traffic stop on the sole basis of 23 V.S.A. § 511, which mandates that license plates on cars "shall be kept horizontal." *Id.* ¶¶ 2, 15. In the criminal proceeding arising from the stop, the trial court granted the defendant's motion to suppress, and this Court affirmed. *Id.* ¶¶ 1, 4. The State argued, similar to its argument here, that the statute was "plain on its face" and that "*any* difference in level

---

[4] We acknowledge defendant's argument that under the State's expansive reading of the statute, sun visors — which are federally mandated — would run afoul of the statute. We agree with defendant that federal regulations mandating that cars have sun visors would preempt any attempt to apply the state statute to a sun visor. But insofar as the federal regulations do not purport to preempt the entire field of state safety regulations concerning visual obstructions in a vehicle, we fail to see how the preemptive effect of federal law with respect to sun visors would extend beyond sun visors. We thus reject defendant's suggestion that, if we were to accept the State's proposed interpretation, the federal regulation would somehow preempt *all* applications of the Vermont statute. See *Hillman v. Maretta*, ___ U.S. ___, ___, 133 S. Ct. 1943, 1949-50 (2013) (stating that state law is preempted " 'to the extent of any conflict with a federal statute,' " such conflict occurring "when compliance with both federal and state regulations is impossible" (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000))).

between the two sides of the license plates means that the license place is not 'horizontal' for the purpose of this statute." *Id.* ¶ 7. We rejected that argument. *Id.* ¶¶ 14, 11. Considering the intent of the Legislature and the purpose of the statute (identification of vehicles) and the need to "interpret the word 'horizontal' in a nonabsurd manner," we found that despite the absolute language of the statute, "a proper reading . . . [is] that a license plate ceases to be 'horizontal' when the angle of the license makes it difficult for a person with normal vision to read it." *Id.*

¶ 16. ■ ■ Third, we are especially sensitive to the likelihood that the State's broad interpretation could impinge on values of a constitutional dimension. We generally construe statutes "to avoid constitutional difficulties, if possible." *In re G.T.*, 170 Vt. 507, 517, 758 A.2d 301, 308 (2000). We have recognized that "even a minor traffic infraction can be the basis of a traffic stop." *Tuma*, 2013 VT 70, ¶ 8. If the host of objects identified above ran afoul of § 1125, the statute would subject a vast swath of the driving population to police stops without any safety rationale. "The stopping of an automobile for questioning by police officers constitutes a seizure, thereby generating the protections of the Fourth Amendment." *State v. Martin*, 145 Vt. 562, 567, 496 A.2d 442, 446 (1985) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Traffic stops are an intrusion on personal privacy and individual liberty. See *State v. Record*, 150 Vt. 84, 87, 95, 548 A.2d 422, 424, 427 (1988) (recognizing that in evaluating " '[t]he reasonableness of seizures that are less intrusive than a traditional arrest,' " courts consider the " 'balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers' " (alteration in original) (quoting *Brown v. Texas*, 443 U.S. 47, 50 (1979)). Any suggestion that the Legislature intentionally enacted an overbroad statute with respect to objects hanging inside the windshield, perhaps in the name of establishing a bright-line rule, is undercut by the recognition that the State's interpretation would significantly reduce the personal liberty of drivers, and passengers, on Vermont's highways by subjecting a substantial proportion of them to police stops without any com-mensurate benefit to public safety. See T. Lockney & M. Friese, *Constitutional Roadkill in the Courts: Looking to the Legislature to Protect North Dakota Motorists Against Almost Unlimited Police Power to Stop and Investigate Crime*, 86 N.D. L. Rev. 1, 2-7 (2010) (using parking-pass scenario as example to describe

562

how traffic stops based on minor noncriminal traffic infractions "easily escalate into protracted and intrusive police efforts to find evidence of criminality").

¶ 17. ■ Finally, we are cognizant of the rule of lenity, the principle that "requires that any doubts created by ambiguous legislation be resolved in favor of the defendant" and construed against the state. *State v. Goodhue*, 2003 VT 85, ¶ 21, 175 Vt. 457, 833 A.2d 861. The rule of lenity "does not apply if the statutory language is unambiguous" and will not be used "to defeat the legislative purpose in enacting the law or to produce irrational and absurd results." *State v. Wainwright*, 2013 VT 120, ¶ 6, 195 Vt. 370, 88 A.3d 423 (quotation omitted). The rule of lenity applies to penal laws, *Gregory v. Poulin Auto Sales, Inc.*, 2010 VT 85, ¶ 14, 188 Vt. 619, 9 A.3d 679 (mem.), and the statute in question here is penal in nature. See *State v. Blondin*, 164 Vt. 55, 57 n.1, 665 A.2d 587, 589 n.1 (1995) (stating that statute is "truly penal," rather than "administrative," when it "defines an offense" or "prescribes a punishment"); *Doe v. La. Bd. of Ethics*, 112 So. 3d 339, 347 (La. Ct. App. 2013) (rule of lenity "applies to both criminal laws and civil statutes of a penal nature").

¶ 18. ■ We note that our determination that a hanging object must materially obstruct a driver's vision to run afoul of § 1125(a) leaves open the question of whether an object like the air freshener in this case causes a material obstruction. The answer to that question would require a fact-specific inquiry. Hanging objects "may (or may not) constitute material obstructions depending on their size, their position relative to the driver's line of vision, and whether they are stationary or mobile." *United States v. Garcia-Garcia*, 633 F.3d 608, 615 (7th Cir. 2011). Analyzing hanging objects like the air freshener in this case, many courts have concluded they do not support a traffic stop.[5] In other cases,

---

[5] E.g., *United States v. Murillo-Figueroa*, 862 F. Supp. 2d 863, 868-69 (N.D. Iowa 2012) (finding stop unreasonable because cluster of four or five tree-shaped air fresheners 3-4" in length hanging from rearview mirrors "did not prevent a 'clear vision' through any of the vehicle's windows"); *People v. Arias*, 159 P.3d 134, 138-39 (Colo. 2007) (finding evidence properly suppressed where officer "failed to articulate a reasonable basis to believe the air fresheners obstructed the driver's vision"); *State v. Cyrus*, 1 A.3d 59, 63-68 (Conn. 2010) (finding evidence properly suppressed because officer had no objectively reasonable belief that defendant's 1" by 1¾" wooden cross/air freshener and ⅛" by 8½" beaded chain hanging from

courts have upheld stops based on objects hanging from the rearview mirror.[6]

¶ 19. ▆▆ For all of the above reasons, we conclude that an operator of a motor vehicle violates 23 V.S.A. § 1125 only when an object hanging behind the windshield materially obstructs the driver's view, and that a traffic stop is thus impermissible unless the officer can demonstrate a reasonable, articulable suspicion that a hanging object materially obstructs the driver's view.

¶ 20. ▆▆ ▆▆ Our rejection of the State's interpretation of the statute does not end the inquiry. The U.S. Supreme Court recently held that reasonable suspicion sufficient to justify an

---

rearview mirror were "distracting or obstructive"); *People v. Mott*, 906 N.E.2d 159, 163-66 (Ill. App. Ct. 2009) (finding evidence properly suppressed where officer never testified that leaf-shaped air freshener of typical size hanging from rearview mirror materially obstructed defendant's vision); *People v. Johnson*, 893 N.E.2d 275, 280 (Ill. App. Ct. 2008) (finding evidence properly suppressed because "the officer's belief, after a fleeting view in the dark," that "life-size" cherry-shaped air freshener hanging from rearview mirror constituted "a material obstruction was not justifiable"); *People v. Cole*, 874 N.E.2d 81, 90-91 (Ill. App. Ct. 2007) (finding no reasonable suspicion to make stop because strand of opaque beads 4" long and ¼" in diameter hanging from rearview mirror was not "material obstruction"); *State v. Houghton*, 2014 WI App 71, ¶¶ 2-3, 10, 848 N.W.2d 904 (per curiam) (unpub.) (finding "standard-size, pine-tree-shaped air freshener hanging from the rearview mirror" insufficient to support stop).

[6] E.g., *Garcia-Garcia*, 633 F.3d at 615-16 (upholding stop based on air freshener because "a reasonable officer could conclude" that air freshener 3" by 5" at its widest point was material obstruction); *People v. Price*, 2011 IL App (4th) 110272, ¶ 31, 962 N.E.2d 1035 (affirming conviction, over dissent, where stop was based on 3" by 3-4" air freshener hanging from mirror where officer "testified to the size of the air freshener, how it swayed back and forth, and that it would have obstructed defendant's view based on his sitting position"); *State v. Barrow*, 975 A.2d 539, 548 (N.J. Super. Ct. App. Div. 2009) (officer's testimony that 3½" by 3½" miniature boxing gloves hanging from rearview mirror were "swaying" and "obstructed the driver's view" were sufficient to support stop); *Mason v. Commonwealth*, 767 S.E.2d 726, 732-34 (Va. Ct. App. 2015) (en banc) (determining, over dissent, that 5" by 4" opaque parking pass hanging from sedan's rearview mirror could "obstruct the driver's clear view of the highway" as prohibited by statute, but declining to "endorse any *per se* rule authorizing traffic stops whenever an object of any kind is observed dangling from a vehicle's rearview mirror"); *State v. Currie*, 2011 WI App 121, ¶ 8, 803 N.W.2d 868 (unpub.) (holding that " 'a very large air freshener' hanging from the rearview mirror obstructs a driver's clear view through the front windshield" and justifies traffic stop); *State v. Jury*, 2010 WI App 145, ¶ 7, 791 N.W.2d 406 (unpub.) (holding that officer's testimony that " 'something [was] dangling from the rearview mirror' " that could get " 'in [the operator's] way' " justified stop) (second alteration in original).

investigatory stop may exist even when the suspicion is based on a mistake of law (i.e., an erroneous "understanding of the scope of a legal prohibition"), as long as that mistake is objectively reasonable. The Court reasoned that:

> Reasonable suspicion arises from the combination of an officer's understanding of the facts and . . . of the relevant law. The officer may be reasonably mistaken on either ground. . . . [J]ust because mistakes of law cannot justify either the imposition or the avoidance of criminal liability, it does not follow that they cannot justify an investigatory stop.

*Heien v. North Carolina,* ___ U.S. ___, ___, 135 S. Ct. 530, 536-40 (2014). In concurrence, Justice Kagan emphasized that the bar is high in cases in which a stop is predicated on a mistake of law. "A court tasked with deciding whether an officer's mistake of law can support a seizure thus faces a straightforward question of statutory construction. If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not." *Id.* at ___, 135 S. Ct. at 541 (Kagan, J., concurring).

¶ 21. ■ ■ As in *Heien,* which also involved an ambiguous vehicle-equipment statute, the statute in this case "poses a quite difficult question of interpretation." *Id.* at ___, 135 S. Ct. at 542 (Kagan, J., concurring). The fact that our decision in this case resolves a split among several Vermont trial courts on this question is reflective of the difficulty of the question, and the reasonableness of the officer's mistaken interpretation of the statute. We conclude that although the officer's stop was based on a misapprehension of the law — i.e., that 23 V.S.A. § 1125 prohibits the hanging of any item on the inside of a windshield without regard to whether the item materially obstructs the driver's vision — the officer's misapprehension was an objectively reasonable one under the circumstances. We therefore find that the Fourth Amendment[7] does not require exclusion of the evidence gathered from the traffic stop in this case, and that the trial court did not err in denying defendant's motion to suppress. We thus affirm the judgment below, albeit on different grounds.

---

[7] On appeal, defendant has not made a distinct challenge under Article 11 of the Vermont Constitution.

See *Gilwee v. Town of Barre*, 138 Vt. 109, 111, 412 A.2d 300, 301 (1980) (stating that we may affirm trial court's decision where there is "any legal ground for justifying the result," since "trial court can achieve the right result for the wrong reason").

*Affirmed.*