Filed 09/27/24


VERMONT SUPERIOR COURT



CIVIL DIVISION

Washington Unit
65 State Street
Montpelier VT  05602
802-828-2091
www.vermontjudiciary.org

Case No. 24-CV-02419

---

Richard McCormack et al v. Phil Scott et al

---

*Ruling on Motion to Dismiss*

On April 15, 2024, Defendant Governor Phil Scott selected Ms. Zoie Saunders to serve as Secretary of Education from a list of three candidates approved by the State Board of Education.  See 3 V.S.A. § 2702(a).  He promptly submitted her name to the Senate for its advice and consent.  3 V.S.A. §§ 256–257, 2702(a).  On April 30, the Senate voted her nomination down.  In response, the Governor appointed Ms. Saunders on an interim, temporary basis until February 28, 2025, or until a "successor is appointed and has qualified."  Two Senators, Tanya Vyhovsky and Richard McCormack, who voted with the majority that rejected Ms. Saunders' nomination, then filed this action challenging the Governor's interim appointment of Ms. Saunders.[1]  They argue that the Governor has no authority to make interim appointments of agency secretaries without seeking the advice and consent of the Senate as set forth in 3 V.S.A. §§ 256–257.  That the Governor has done so, they argue, nullifies their duty to provide advice and consent.  They argue that everything Ms. Saunders has done in office since April 30 is *ultra vires* and invalid.  The seek declarations to those effects.

The Governor seeks dismissal.  He argues that the court has no subject matter jurisdiction on ripeness, standing, and political question grounds.  On the merits, he disagrees with the Senators' interpretation of 3 V.S.A. §§ 256–257, but more fundamentally, he argues that he has independent constitutional authority to make interim appointments without the advice and consent of the Senate under Vt. Const. ch. II, § 20.

Oral argument was held on September 26, 2024.  The Senators were represented by John Franco, Esq.  The Governor was represented by David Golubock, Assistant Attorney General.

*Standing/Ripeness/Political Question*

The justiciability issues must be analyzed with reference to the claim as the Senators have framed it.  It is improper to reach the merits prior to determining

---

[1] The Court refers to the Defendants collectively as the Governor for ease of reference, and because Governor Scott's actions, not Ms. Saunders', are at issue in this case.

standing.[2]  See *Arizona State Legislature v. Arizona Independent Redistricting Com'n*, 576 U.S. 787, 800 (2015) ("Although we conclude that the Arizona Legislature does not have the exclusive, constitutionally guarded role it asserts, one must not 'confus[e] weakness on the merits with absence of Article III standing.'" (citation omitted)); *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982) ("The requirement of standing 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.'" (citation omitted)); *Committee on the Judiciary of the United States House of Representatives v. McGahn*, 968 F.3d 755, 762 (D.C. Cir. 2020) ("When determining whether a plaintiff has Article III standing, the court must assume that the [plaintiff] will prevail on the merits.").

To that end, the Senators assert that the Governor has no lawful authority to appoint *any* secretary of any agency on a so-called interim basis under any circumstances, much less one that the Senate already has refused to confirm, without immediately seeking the advice and consent of the Senate.  Assuming that the Senators will prevail on the merits of that claim, the Governor's interim appointment of Ms. Saunders clearly nullifies their statutory duty to provide advice and consent.  With that framing, the Senators do not lack standing, their claim cannot be unripe, and the political question doctrine does not prevent the court from reaching the merits.

The Senators argue that *Turner v. Shumlin*, 2017 VT 2, 204 Vt. 78, counsels strongly in favor of their standing here.  The Governor argues that *Turner* was poorly decided insofar as it principally relies on authorities that predate and do not reflect *Raines v. Byrd*, 521 U.S. 811 (1997), which is widely considered to have strictly limited the breadth of legislator standing.  See 13B Wright & Miller et al., Fed. Prac. & Proc. Juris. 3d § 3531.11.2 ("The 1997 decision in *Raines v. Byrd* establishes strict limits on any theory of standing that might be advanced by a member of Congress who seeks to challenge an Act of Congress.  These limits, drawn from separation-of-powers concerns that mimic political-question doctrine, may well preclude such standing entirely.  They also will severely limit standing to challenge executive action, although there may be a better opportunity to achieve standing in this setting." (footnotes omitted)).  The Governor would have the court adopt *Raines* for purposes of Vermont's standing doctrine notwithstanding *Turner*.  He also argues that *Turner* is distinguishable because the Senate's advice and consent authority in that case had a constitutional source whereas here it is statutory only.

The facts of *Turner* are straightforward.  Then-Governor Shumlin announced that

---

[2] The Governor interprets the constitutional and statutory provisions at issue in this case and concludes that they do not prevent the Governor from making an interim appoint and therefore nothing he has done harms the Senators, who therefore lack standing.  And because any injury they might suffer in the future has not yet happened, they argue, their claim is not ripe.  Put simply, he reaches the merits to show that there is no standing.  But these arguments put the substantive cart before the justiciability horse.  The standing inquiry assumes that the plaintiffs' claim, as they have framed it, will be meritorious.  Once standing is shown, the merits may be reached.  One can have standing to assert a claim that has no merit.  For its part, the ripeness doctrine assumes that the "asserted injury would be adequate" and focuses merely on the timing of its occurrence.  13B Wright & Miller et al., Fed. Prac. & Proc. Juris. § 3531.12 (3d ed.) ("Ripeness and mootness easily could be seen as the time dimensions of standing.").

he would not seek another term. With Governor Shumlin still in office, Justice Dooley indicated that he would not seek retention for another term in the Supreme Court. The timing of the expirations of these two terms was such that Governor Shumlin would be out of office before Justice Dooley. Governor Shumlin then announced that he would fill the "vacancy" on the Supreme Court due to the impending termination of Justice Dooley's term. A House member, later joined by Senator Benning, sued Governor Shumlin. The substantive dispute was whether Governor Shumlin could appoint a new justice in anticipation of Justice Dooley's departure, or whether the succeeding governor, the one in office when the vacancy would actually materialize, would make that appointment.

Governor Shumlin argued that the plaintiffs lacked standing. The standing question turned to whether Governor Shumlin's anticipated exercise of his appointment power would undermine Senator Benning's duty to provide advice and consent regarding that appointment.[3] *Turner v. Shumlin*, 2017 VT 2, ¶ 14, 204 Vt. 78. The Court explained:

> Although legislators, like other plaintiffs, must satisfy these same elements [the traditional injury, causation, redressibility elements] to demonstrate standing, separation of powers and the limited role of the judiciary compel particular scrutiny in determining whether there is an injury in fact.
>
> Generally, "legislators have a legally protected interest in their right to vote on legislation and other matters committed to the legislature, which is sometimes phrased as an interest in 'maintaining the effectiveness of their votes.'" "Not every affront to a legislator's interest in the effectiveness of his [or her] vote . . . is an injury in fact sufficient to confer standing to sue." But "legislators, as legislators, are granted standing to challenge executive actions when specific powers unique to their functions under the Constitution are diminished or interfered with." Legislative standing, however, is not available "to obtain a result in a courtroom which [a legislator] failed to gain in the halls of the Legislature."
>
> Applying these general principles, courts have found legislative standing when a governor's conduct concerning the appointment of state officers interfered with the complaining legislators' constitutional duty to provide advice and consent with regard to the appointments. *In [one case], for example, the court held that eight legislators had standing to challenge the governor's appointment of a person as "acting" commissioner after the legislature had rejected the governor's nomination of the same person in the same post. The legislators complained that the governor had circumvented the process of advice and consent, thereby nullifying their votes. The court agreed that the legislators had standing to protect their unique statutory right to provide advice and consent.* The court further found that there were

---

[3] The ruling on standing is predicated on the advice and consent duty of Senator Benning only.

no prudential concerns that would have barred the legislators' suit on standing grounds, given that the legislators could not obtain redress through legislative means.

In [another case], the court held that a state senator had standing to challenge the governor's failure to appoint certain state officers within the time provided by the state constitution. The court based its holding on the senate's constitutional duty to provide advice and consent as to the appointments in question.

*Turner v. Shumlin*, 2017 VT 2, ¶¶ 12–15, 204 Vt. 78 (emphasis added, citations omitted). After that, the Court summarily concluded:

With these legal principles in mind, we conclude that Senator Benning has standing to challenge respondent's authority to appoint Justice Dooley's successor. As a member of the Vermont Senate, Senator Benning has the constitutional right and duty to give "advice and consent" on the Governor's nomination of an Associate Justice to this Court. Vt. Const. ch. II, § 32. That right necessarily encompasses an interest in being assured that his vote—pursuant to his constitutional duty to provide "advice and consent" on the Governor's Supreme Court appointments—is exercised with respect to a properly named appointee under the Vermont Constitution.

*Id.* ¶ 16. It went on to even more quickly dismiss any concerns that the case presented a political question. *Id.* ¶¶ 19–21.

In analyzing the matter, the Court, whether in reference to some of the cited cases or as to the facts of *Turner* itself, several times characterized the duty to provide advice and consent as constitutional. The Governor argues that the constitutional nature of the duty in *Turner* materially distinguishes that case from this. Here, there is no constitutional duty to provide advice and consent. The duty is statutory only. See Vt. Const. ch. II, § 20; 3 V.S.A. §§ 256–257, 2702(a).

Nothing in the *Turner* decision appears to depend on whether the duty to provide advice and consent was prescribed by constitution rather than statute, and the Governor does not explain why that should make any fundamental difference to the standing question. Indeed, not one of the cases cited in *Turner* hints that the distinction matters, and among those are citations to Third Circuit cases arising out of a *statutory* duty to provide advice and consent in the U.S. Virgin Islands. See, e.g., *Turner*, 2017 VT 2, ¶ 14 (expressly recognizing that the duty to provide advice and consent at issue in *Dennis v. Luis*, 741 F.2d 628 (3d Cir. 1984) was statutory). The U.S. Virgin Islands does not yet even have a constitution. See https://en.wikipedia.org/wiki/United_States_Virgin_ Islands. *Turner* is not distinguishable on this basis.

Otherwise, *Turner* is remarkably on point. If Senator Benning had standing to argue that the manner by which Governor Shumlin intended to appoint a Supreme Court

justice was unconstitutional because it would diminish the vitality of his duty to provide advice and consent, *even though there was no argument about whether the Senate's exercise of that right would be respected*, then it is very difficult to see why the Senators here would not have standing to argue that they in fact provided advice and consent and the Governor proceeded to completely ignore it, nullifying their successful votes to not confirm his appointment for Secretary of Education.

Nor can the court simply sidestep *Turner* in favor of applying federal precedent that may counsel in favor of a different outcome. The Vermont Supreme Court has been crystal clear that Vermont courts are not "bound by each word stated in the United States Supreme Court's—and any other federal court's—standing precedents, particularly where those developments have occurred without discussion or mention in our caselaw. Vermont courts are not obliged to follow federal standing rules because standing therein is ultimately determined by the Vermont Constitution." *Ferry v. City of Montpelier*, 2023 VT 4, ¶ 15, 217 Vt. 450. *Turner* is on point and controlling. The Senators have standing in this case.

It is similarly clear that the Senators' claim is ripe. "Courts will ordinarily not render decisions involving events that are contingent upon circumstances that may or may not occur in the future." *In re Robinson/Keir P'ship*, 154 Vt. 50, 57 (1990). The Senators are not waiting for something to happen. As they have framed their claim, the harm already has occurred. Their vote has been ignored.

Nor does this case present a nonjusticiable political question. As the *Turner* Court remarked, "Not every gubernatorial action is a political question immune from judicial scrutiny, regardless of whether it comports with the Constitution. The issue here is not executive discretion or prerogative, but rather the meaning of the Vermont Constitution, which this Court must determine." *Turner v. Shumlin*, 2017 VT 2, ¶ 21, 204 Vt. 78. The court perceives no reason why the political question doctrine should cause the court to abstain from determining the substantive question presented.

*On the Merits*

The Governor appoints a Secretary of Education from a list of no fewer than three candidates selected by the State Board of Education.[4] 3 V.S.A. § 2702(a). The Secretary serves at the Governor's pleasure and is a member of his Cabinet. *Id*. § 2702(b). The appointment is subject to the Senate's advice and consent. *Id*. ¶ 2702(a). All secretaries of agencies appointed by the Governor are subject to the advice and consent of the Senate. 3 V.S.A. §§ 256(b), 257(b).

There is no constitutional provision subjecting the Governor's appointment of agency secretaries to the advice and consent of the Senate (or anyone else). Rather, the general provision is as follows: "The Governor, and in the Governor's absence, the Lieutenant-Governor, shall have power to commission all officers, and also to appoint officers, except where provision is, or shall be, otherwise made by law or this Frame of

---

[4] There is no statutory time limit as to how long the Board may take to produce such a list once there is a vacancy.

Government; and shall supply every vacancy in any office, occasioned by death or otherwise, until the office can be filled in the manner directed by law or this Constitution." Vt. Const. ch. II, § 20.

The Senators argue as follows. Section 20 of the Constitution limits the Governor's appointment powers to any relevant provisions of law, such as 3 V.S.A. §§ 256–257, 2702(a). These statutes address the entire subject matter and leave no room for any appointments of interim Secretaries on a temporary basis without the advice and consent of the Senate. Among them, § 256 primarily addresses appointments made when the legislature is in session, and § 257 primarily addresses appointments when the legislature is out of session. Section 256(b) expressly says, "Notwithstanding any other provision of law, all secretaries of State agencies . . . shall take office only with the advice and consent of the Senate except in the case of an appointment to fill a vacancy when the General Assembly is not in session in which case the appointee may take office subject to the provisions of section 257 of this title." Section 257(b) provides: "When a vacancy occurs in an office requiring appointment with the advice and consent of the Senate, an appointment may be made to fill the vacancy. If the appointment to fill the vacancy is made during any adjournment of the General Assembly the person appointed may validly function in that office during adjournment until the Senate convenes at the next regular, adjourned, or special session and acts upon the appointment submitted forthwith by the Governor; or if the appointment to fill the vacancy is made during any session of the General Assembly, the person appointed may validly function in that office until the Senate shall act upon the appointment submitted forthwith by the Governor. Thereafter the appointee shall continue in office if the Senate consents to the appointment."

The Governor instead argues that he has direct, constitutional authority to make interim appointments without the advice and consent of the Senate under Vt. Const. ch. II, § 20. Section 20 says that vacancies are made in the manner directed by law or the Constitution *and* that the Governor "*shall supply every vacancy in any office*, occasioned by death or otherwise, *until* the office can be filled in the manner directed by law or this Constitution." Vt. Const. ch. II, § 20 (emphasis added). There are no statutes that seek to regulate this appointment authority of the Governor that precedes the regular process.

The debate may be framed by two competing dichotomies. As the Governor sees it, the constitutional provision divides appointments into two categories—regular or "permanent" appointments made subject to whatever statutes control the process and temporary or "interim" appointments made pending completion of any regular statutory process. As the Senators see it, 3 V.S.A. §§ 256–257 divides agency secretary appointments into a different two categories—those made when the legislature is in session and those made when the legislature is not, and both kinds require the Senate's advice and consent. To the Senators, these statutory provisions are seamless and all encompassing, allowing no room for temporary appointments outside their scope.

The Governor's powers under Vt. Const. ch. II, § 20 long predate any advice and consent authority of the Senate. Vermont was unicameral—there was no Senate—until

1836. Before that, beginning in 1777, the "Supreme Executive Power" was exercised by the Governor and the Executive Council. Vt. Const. (1777) ch. II, § 3. Then, the appointments clause read as follows: "The Governor, and in his absence the Lieutenant or Deputy Governor, with the Council—seven of whom shall be a quorum—shall have power to commissionate all officers (except those who are appointed by the General Assembly), agreeable to this frame of government, and the laws that may be made hereafter; *and shall supply every vacancy in any office, occasioned by death, resignation, removal or disqualification, until the office can be filled in the time and manner directed by law or this constitution.*" Vt. Const. (1777) ch. II, § 18 (emphasis added). The emphasized language is virtually identical in the 1786 and 1793 Constitutions. Vt. Const. (1786) ch. II, § 9; Vt. Const. (1793) ch. II, § 11.

Thus, long before the Senate even existed to have any power to advise and consent, the Governor and the Council's principal appointment authority (framed as the powers to commissionate and appoint) was subject to any laws that controlled that process, and "until" any such legal process could unfold, they had a subordinate power and duty to "supply every vacancy," to appoint provisional officers pending the statutory process.[5] This provision thus appears to contemplate two types of officers: those who hold office following the successful statutory appointment process, and those who the Governor appoints to hold office on a temporary basis until that process concludes. Both types— permanent and temporary—are necessary so that the Governor can fulfill the apparent constitutional mandate to avoid enduring vacancies.

In 1836, the Council of Censors did away with the Executive Council and created our bicameral General Assembly that includes a Senate. See Journal of the Council of Censors at their Sessions at Montpelier and Middlebury in 1834 and 1835 at 58–64. The Executive Council was deleted from the Constitution and the appointments clause in particular, which otherwise continues to include nearly identical language dating to 1777. Vt. Const. ch. II, § 20. At some point thereafter, appointments of agency secretaries were made subject to the Senate's advice and consent by statute.

The current appointments clause continues to subject the Governor's appointments to applicable provisions of law, which now include the Senate's advice and consent, and the Governor continues to retain the separate power to make interim appointments, of necessity without the Senate's advice and consent, until the statutory process results in a filled vacancy.

With that constitutional backdrop, the regime at 3 V.S.A. §§ 256–257 comes into focus. Section 256(b) squarely says, "Notwithstanding any other provision of law, all secretaries of State agencies and all commissioners of State departments shall take office only with the advice and consent of the Senate except in the case of an appointment to fill a vacancy when the General Assembly is not in session in which case the appointee may

---

[5] The Senators treat all appointment power in Vt. Const. ch. II, § 20 as subject to statutory procedures without any detailed analysis of the constitutional language. In particular, they offer no explanation as to what "shall supply every vacancy . . . until" might be referring if not to an independent power to appoint not subject to the regular statutory procedures but to be implemented in advance of them.

take office subject to the provisions of section 257 of this title." Section 257(b) then says, "When a vacancy occurs in an office requiring appointment with the advice and consent of the Senate, an appointment may be made to fill the vacancy. If the appointment to fill the vacancy is made during any adjournment of the General Assembly the person appointed may validly function in that office during adjournment until the Senate convenes at the next regular, adjourned, or special session and acts upon the appointment submitted forthwith by the Governor; or if the appointment to fill the vacancy is made during any session of the General Assembly, the person appointed may validly function in that office until the Senate shall act upon the appointment submitted forthwith by the Governor. Thereafter the appointee shall continue in office if the Senate consents to the appointment."

Viewed through the constitutional distinction between appointments made pursuant to the statutory process and those vacancies "supplied . . . until" that process successfully concludes, the references in these statutes to secretaries or "all secretaries" is ambiguous insofar as one might interpret the expression to include or exclude interim appointments. But if these statutes are interpreted to extend to interim appointments such as Ms. Saunders', then there is no practical way to avoid ensuring vacancies in the highest positions of leadership in agencies are filled pending the statutory process, and there is no alternative statutory process regulating the Governor's temporary appointment authority.

In this case, the Governor's ability to make any appointment initially was subject to receipt of the State Board of Education's approval of no fewer than three candidates, and there is no statutory limit on how long the Board can take to approve candidates. If the Senators' interpretation of §§ 256–257 were correct, the Agency would necessarily have to operate without any Secretary at the helm as long as it took for the Board to approve candidates and the Governor to choose one. Even if the process did not depend on this determination by the Board, any agency can experience a secretarial vacancy at any time. It is unreasonable to expect that any governor, surprised by a secretarial vacancy, could instantly make such a weighty decision as to who to appoint as a successor without due diligence and contemplation.

By referring to "all secretaries," §§ 256–257 thus appear to be referring exclusively to all regularly appointed permanent secretaries, not interim appointments made under the Governor's subsidiary power to "supply every vacancy . . . until" the permanent secretary is in office. See *State v. Hurley*, 2015 VT 46, ¶ 16, 198 Vt. 552 (2015) ("We generally construe statutes 'to avoid constitutional difficulties, if possible.'") (citation omitted)).

The parties skirmish over what the statutory term "forthwith" means in 3 V.S.A. §§ 256–257. The Senators appear to argue that it means that any time there is any kind of secretarial appointment that the Governor must immediately submit the name of the appointee to the Senate for advice and consent even if, as here, it is a temporary appointment. The Governor argues that "forthwith" was intended to give the Governor flexibility as to when to send a name to the Senate for advice and consent. As the court

concludes that §§ 256–257 does not address the appointment power exercised in this case, the court declines to resolve this dispute.

The Senators argue that the court's interpretation of Vt. Const. ch. II, § 20 and 3 V.S.A. §§ 256–257 raises the specter of a governor serially nominating the same secretary candidate that the Senate keeps voting down, appointing that candidate on an interim basis between Senate votes, as a way of intentionally defeating the Senators' duty to advise and consent. The example describes a bad faith course of conduct in which a governor intentionally abuses the subsidiary authority to make interim appointments in Vt. Const. ch. II, § 20.

There is no evidence of that in this case and thus there is no reason to dwell on how such a situation might be resolved if it ever arises in the future. On April 15, 2024, with the legislature in session, the Governor appointed Ms. Saunders. On April 30, the Senate voted the nomination down. In response, the Governor appointed Ms. Saunders on an interim basis until February 28, 2025, or until a "successor is appointed and has qualified." The session ended on May 10. A 1-day veto session was held on June 17. The next legislative session will begin on the "first Wednesday next after the first Monday in January." Vt. Const. ch. II, § 7. Assuming the Governor's good faith, the appearance is that the interim appointment of Ms. Saunders is not intended to be indefinite in some manner usurping the Senate's advice and consent authority but is timed so that the matter of an appointment of a permanent secretary can be presented to the Senate again in the next legislative session. The vast majority of the temporary appointment of Ms. Saunders so far as can be determined at this time will have been while the legislature is out of session.

As the Governor points out, he is not the first to exercise the interim appointment authority under Vt. Const. ch. II, § 20. The back-and-forth between the legislative and executive branches has tolerated such appointments numerous times without provoking lawsuits or legislation attempting to regulate the matter.

To the extent that the Senators argue that the Senate's decision to not confirm Ms. Saunders prevents the Governor from reappointing her, whether on an interim or permanent basis, the court disagrees. There is no statute that so provides. When the legislature has wanted to so limit the Governor's appointment power, it has simply said so. See, e.g., 18 V.S.A. § 9374(a)(2) ("The Governor shall not appoint a nominee [to the Green Mountain Care Board] who was denied confirmation by the Senate within the past six years."). There is no such limitation regarding the office of the Secretary of Education.

Order

For the foregoing reasons, the Governor's motion to dismiss is granted, and the Senators' complaint is dismissed on the merits.

SO ORDERED this 27th day of September, 2024.

Robert A. Mello
Superior Judge