*Magowan v. John Larkin, Inc.*, No. 562-6-17 Cncv (Mello, J., June 29, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Chittenden Unit | FAMILY DIVISION<br>Docket No. 562-6-17 Cncv |

| | |
|---|---|
| Emily Magowan as Executrix<br>of the Estate of Patricia Calmer,<br>　　　Plaintiff<br><br>　　　　　v.<br><br>John Larkin, Inc., d/b/a/<br>Pillsbury Manor South,<br>　　　Defendant | DECISION RE: PLAINTIFF'S MOTIONS<br>TO COMPEL AND DEFENDANT'S<br>MOTION FOR PROTECTIVE ORDER |

　　　　This is a negligence action arising from the death of Patricia Calmer. Plaintiff[1] Emily Magowan is executrix of Ms. Calmer's estate. Defendant John Larkin, Inc. is the former corporate owner of Pillsbury Manor South, an assisted living facility located in South Burlington, Vermont. Ms. Calmer was found dead in her room at Pillsbury Manor South in the early hours of November 3, 2016. Subsequent to Ms. Calmer's death at the facility, but prior to Plaintiff filing her complaint, Pillsbury Manor South was sold to nonparty ELCM Manor South Leasing, LLC ("ELCM"), which is Pillsbury Manor South's current corporate owner.

　　　　Currently pending before the Court are Plaintiff's Motion to Compel (against Defendant John Larkin, Inc.), Plaintiff's Motion to Compel Against ELCM Manor South Leasing, LLC d/b/a/ Pillsbury Manor South, and Defendant's Motion For Protective Order. They are addressed in turn.

## I.　　Plaintiff's Motion To Compel Against Defendant John Larkin, Inc.

　　　　Plaintiff filed a motion to compel November 22, 2017, in which she argues that Defendant has failed to produce documents responsive to Plaintiff's discovery requests and that Defendant has inadequately alleged "boilerplate" privileges with insufficient explanation to show that Plaintiff is not actually entitled to the documents. Defendant opposes the motion, arguing that Plaintiff seeks the production of confidential, peer-review records and other documents which are beyond the scope of V.R.C.P. 26.

---

[1] This action originally involved two plaintiffs. Plaintiff Charles Calmers has withdrawn from the case. For clarity, this order refers only to the individual remaining plaintiff, Emily Magowan, even when certain filings were technically made by both then-plaintiffs jointly.

Defendant provided Plaintiff with a privilege log on November 1, 2017. In the privilege log, Defendant identified sixteen documents it was withholding from discovery. Plaintiff challenges Defendant's decision to withhold seven documents[2] pursuant to the peer-review-committee privilege. Plaintiff also seeks transaction documents reflecting the sale of Pillsbury Manor South by Defendant to ELCM, as well as documents relating to any complaints Defendant has received regarding similar incidents.

A party invoking a privilege has the burden of showing the privilege applies. See *Douglas v. Windham Superior Court*, 157 Vt. 34, 43, 597 A.2d 774 (1991).

Except when the motion is based solely upon the failures described in V.R.C.P. 37(d), memoranda with respect to any discovery motion must "contain a concise statement of the nature of the case and a specific verbatim listing of each of the items of discovery sought or opposed, and immediately following each specification shall set forth the reason why the item should be allowed or disallowed." V.R.C.P. 26(h). Despite this requirement, which has been in place since the rules' 1992 amendment, the parties have both chosen to submit memoranda which, while detailed, frequently fail to include either a *concise* statement of the nature of the case or a specific verbatim listing of each item of discovery sought or opposed along with the reasons why such items should be allowed or disallowed.

Generally speaking, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relative information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. V.R.C.P. 26(b)(1). While it must be nonprivileged and relevant, information need not be admissible to be discoverable. See V.R.C.P. 26(b)(1). Decisions on discovery requests are left to the sound discretion of the trial judge. *Pcolar v. Casella Waste Sys., Inc.*, 2012 VT 58, ¶ 11, 192 Vt. 343.

## A. Peer-Review-Committee Privilege

The first dispute between the parties is the meaning and effect of 26 V.S.A. §§ 1441–1443, Vermont's peer review committee privilege provisions. As the party asserting that

---

[2] Specifically,

(1) an email from Liza Rixon to Christina Espe, Erin Knox, and Felicia Stinchfield "regarding patient incident and investigation" sent on 11/3/16,
(2) typed investigation notes prepared by Liza Rixon on 11/3/16,
(3) a written statement prepared by Beata Byrd on 11/3/16,
(4) typed investigation notes prepared by Samantha Gambero, RN, on 11/4/16,
(5) a written statement prepared by Cecil Adu-Damoah on 11/4/16,
(6) a written statement prepared by Godelive Bombo on 11/4/16, and
(7) a written statement prepared by Godelive Bombo on 11/7/16.

See Pl. Mot. to Compel at 6.

2

documents are privileged under the peer-review-committee privilege, Defendant bears the burden of establishing (1) the existence of a protected privilege under law, and (2) the information sought was privileged information. See *State v. Emerson*, 150 Vt. 128, 129, 549 A.2d 1072 (1988); *State v. Springer*, 139 Vt. 471, 474, 431 A.2d 460 (1981).

26 V.S.A. § 1443(a)[3] states:

> [t]he proceedings, reports, and records of [peer review committees] including information and evidence required to be reported pursuant to [26 V.S.A. § 1317] shall be confidential and privileged, and shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are subject to evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any findings, recommendations, evaluations, opinions, or other actions of such committees or any members thereof. However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such action merely because they were presented during the proceedings of such committee, nor shall any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his or her knowledge, but such witness shall not be asked about his or her testimony before such committee or about opinions formed by him or her as a result of such committee hearings.

26 V.S.A. § 1443(a). 26 V.S.A. § 1441 defines "peer review committee" to mean

> the Vermont professional standards review organization or its subsidiary committees, the Vermont Program for Quality in Health Care, Inc. or its subsidiary committees, a peer review committee or other comparable committee established by a health maintenance organization in accordance with the provisions of 18 V.S.A. § 9414, or a committee of a state or local professional association or of a hospital or other health care provider which is formed to evaluate and improve the quality of health care rendered by providers of health services or to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area.

26 V.S.A. § 1441. The catch-all definition of "a committee of a… other health care provider" appears to be the only definition which may apply here.

Defendant bears the burden of showing that the seven documents it has chosen to withhold are "proceedings, reports, [or] records of [a peer review committee]". See 26 V.S.A.

---

[3] 26 V.S.A. § 1443(b) and (c) permit disclosure of peer review committee material to the State Board of Medical Practice and are irrelevant to this action. See 26 V.S.A. § 1443(b)–(c).

1443(a); *Emerson*, 150 Vt. at 129, *Springer*, 139 Vt. at 474. To this end, Defendant has submitted the affidavit of Christina Espe. See Def. Opp. To. Pl. Mot. To Compel and Def. Mot. For Protective Order Ex. D ("First Espe Aff.").

According to the affidavit, Christina Espe was the Executive Director for Pillsbury Manor South before it was sold to ELCM in May 2017. First Espe Aff. at ¶ 1. At the time of the Ms. Calmer's death, there was a committee designed the Pillsbury Safety Committee. *Id.* at ¶ 3. This committee had "at least four staff members, including the nurse administrator, Elizabeth Rixon." *Id.* "The Safety Committee met regularly for the purpose of discussing resident safety issues and methods for improving the quality of care provided to residents." *Id.* "The Safety Committee reviewed Ms. Calmer's accident for the specific purpose of quality improvement." *Id.* at ¶ 4. The documents sought by Plaintiffs in this case "were created as part of Pillsbury's quality review investigation of Ms. Calmer's accident." *Id.* at 5. "The incident report, notes, staff interviews, and witness statements were completed and compiled at the direction of Ms. Rixon as close as possible to the time of the event and for the purpose of quality review by the Safety Committee in order to fulfill Pillsbury's commitment to continuously improve the quality of care provided to its residents." *Id.* at ¶ 7.

Plaintiff interprets records she has obtained to mean that the Pillsbury Safety Committee was not created until after Ms. Calmer's death. This interpretation, which is found only in Plaintiff's argument and is not explicitly supported by an affidavit or other evidence, is adequately explained away by the submitted second affidavit of Christina Espe, which illustrates how there was a Pillsbury Safety Committee in place at the time of Ms. Calmer's death, and a risk management committee was designated only after the investigation of the Agency of Human Services, Department of Disabilities, Aging and Independent Living, Division of Licensing and Protection. See Def. Reply In Opp. To Pl. Mot. To Compel And In Support Of Mot. For Protective Order Ex. M ("Second Espe Aff.") at ¶¶ 1–5.

The Court is persuaded that the Pillsbury Safety Committee was a "committee of a… health care provider which [wa]s formed to evaluate and improve the quality of health care rendered by providers of health services."

Because "the incident report, notes, staff interviews, and witness statements were completed and compiled" at the direction of a committee member "for the purpose of quality review by" the committee, the Court is also persuaded that the documents sought by Plaintiff are reports or records of a peer review committee. Accordingly, they are "confidential and privileged, and shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are subject to evaluation and review by such committee." See 26 V.S.A. § 1443(a).

The Court notes, however, that the information contained in these documents is not itself privileged. Plaintiff is able to seek the underlying information directly from the authors of those documents, although she is not able to elicit testimony "as to any findings, recommendations, evaluations, opinions, or other actions" of the Pillsbury Safety Committee or its members. See *id.* Individuals' personal observations prior to any investigative action by Ms. Rixon or other

Pillsbury Safety Committee members are not protected by the peer-review privilege. Information recounted to the committee is not protected simply by such recounting. See *id.* ("information… [is] not to be construed as immune from discovery or use… merely because [it was] presented during the proceedings of such committee.").

Plaintiff's argument as to the effect of 26 V.S.A. § 1313 does not alter this result. 26 V.S.A. § 1443's primary effect is to privilege "proceedings, reports, and records of committees," not individuals who may or may not be health care professionals licensed or certified by the Office of Professional Regulation. Furthermore, Plaintiff's interpretation runs directly counter to the strong policy behind 26 V.S.A. § 1443 favoring and privileging peer-review procedures, including purely internal procedures: if peer review records are rendered discoverable solely because some individuals involved in the process are health care professionals who happen to be regulated by the Office of Professional Regulation, the efficacy of peer review generally could be significantly curtailed, either by the exclusion of those health care professionals from such processes or by the reduction of the candor the peer-review privilege is meant to promote.

Nor does Plaintiff's argument that Defendant does not hold the peer-review privilege due to Pillsbury Manor South's sale to ELCM alter this result. If Defendant retains peer-review documents that are subject to the privilege, the sale of the facility at which the peer-review committee functioned is not insufficient to render Defendant unable to exercise the peer-review privilege as to the documents it retains. Holding otherwise would undercut the fundamental function of 26 V.S.A. §§ 1441–43, which is to protect peer-review materials from discovery in order to promote improvements in the quality and safety of provided healthcare: if the sale of a health care facility rendered all peer-review materials generated prior to the sale discoverable, then either operators of such facilities would be disincentivized from ever selling them or the privilege would be intrinsically temporary, evaporating as soon as corporate ownership changes. The former is utterly irrelevant to the statute's subject matter, and the latter is contrary to its purpose. Accordingly, the Court finds that Defendant is still able to invoke the peer-review privilege as to peer-review materials created while Defendant operated Pillsbury Manor South. See *State v. Tuma*, 2013 VT 70, ¶ 8, 194 Vt. 345 (courts "do not construe statutes in such a way as to lead to 'absurd or irrational results'") (quoting *State v. Rice*, 145 Vt. 25, 34, 483 A.2d 248 (1984)). While Plaintiff cites one Southern District of Indiana case for the proposition that the right to invoke an evidentiary privilege follows a transfer of substantially all of a corporation's assets, there is no evidence before the Court showing that rule would be dispositive here.

Plaintiff also asserts that, because the Division of Licensing "has noted the falsity of the statements given [in the documents Plaintiff seeks,]" V.R.E. 501(b) prevents application of any statutory privilege, including 26 V.S.A. § 1443's peer-review privilege.

V.R.E. 501(b) generally applies:

to information which is protected by a statutory privilege and which: (1) was collected or recorded under a statute, rule or order requiring a report, disclosure or communication to a public agency, officer or employee; (2) was collected or recorded by a public agency, officer, or employee in order to provide treatment or

5

services to the privilege holder or to determine whether to charge the privilege holder with a crime or delinquent act; or (3) was communicated to a mediator, factfinder or arbitrator during a labor dispute or negotiation.

Among other provisions, V.R.E. 501(b) states that, as to the statutory privileges above, "[n]o privilege exists in actions involving perjury, false statements, fraud in a return or report, or other failure to comply with the statute, rule or order in question."

Plaintiff's argument that the peer-review privilege is inapplicable here fails. While information which is arguably protected by the peer-review privilege was collected under a statute, rule or order requiring a report, disclosure or communication to a public agency, this is a not an action involving perjury, false statements, fraud in a return or report, or other failure to comply with the statute, rule or order in question. This is a complaint for negligence. Plaintiff's conclusory allegation of false statements, even bolstered by the Division of Licensing's passing comments on failures in disclosure, does not convert this action from a negligence complaint to one involving perjury, false statements, or failure to comply with the statute, rule or order in question. Rather, a criminal prosecution for perjury would be an action "involving perjury;" a civil action for fraud would be an action "involving false statements," and an administrative proceeding or civil action by the state investigating failure to comply with statutory or regulatory disclosure requirements would be an action "involving other failure to comply with the statute, rule or order in question." The Court reads 501(b) as preventing invocation of statutory privileges to defeat statutory disclosure obligations, not as a wholesale revocation of statutory privileges as to all parties wherever there may be some inconsistency between disclosed information and some other privileged material.

For the foregoing reasons, Plaintiff's motion to compel is denied as to the peer-review-privileged documents in Defendant's possession. Specifically,

(1) an email from Liza Rixon to Christina Espe, Erin Knox, and Felicia Stinchfield "regarding patient incident and investigation" sent on 11/3/16,
(2) typed investigation notes prepared by Liza Rixon on 11/3/16,
(3) a written statement prepared by Beata Byrd on 11/3/16,
(4) typed investigation notes prepared by Samantha Gambero, RN, on 11/4/16,
(5) a written statement prepared by Cecil Adu-Damoah on 11/4/16,
(6) a written statement prepared by Godelive Bombo on 11/4/16, and
(7) a written statement prepared by Godelive Bombo on 11/7/16.

### B. Transaction Documents

Plaintiff seeks compelled disclosure of transaction documents from the recent sale of Pillsbury Manor South from Defendant to ELCM. In support of its motion to compel, Plaintiff argues that the documents could show what Defendant said about the death of Ms. Calmer to ELCM in the course of sale negotiations, could show which party maintains control over peer-review documents or other sought discovery, and may reveal whether any other party is responsible to Defendant.

6

Defendant opposes the disclosure of the transaction documents, arguing that, based on its own review, the documents are irrelevant, and characterizing Plaintiff's request as a "fishing expedition." See Def. Opp. To Pl. Mot. To Compel And Def. Mot. For Protective Order at 12 (citing V.R.C.P. 26(b)(1); *St. John v. Napolitano*, 274 F.R.D. 12, 16 (D.D.C. 2011) ("[t]he relevance standard is 'not so liberal as to allow a party to roam in shadow zones of relevancy and explore matter which does not presently appear germane on the theory that it might conceivably become so.'")).

The Court is persuaded that the transaction documents are nonprivileged and fall within the scope of discovery defined in V.R.C.P. 26(b)(1). While they may not be dispositive on the core questions of the case: how Ms. Calmer died and who, if anyone was negligent, the transaction documents may show what, if anything Defendant represented to ELCM regarding that death, and what effect, if any, the transaction between Defendant and ELCM had on relevant document control and privilege.

Accordingly, Plaintiff's motion to compel is granted as to the transaction documents Plaintiff seeks.

## C. Other Complaints Against Defendant

Plaintiff seeks documents related to complaints against Defendant.[4] Defendant objects, arguing alternatively that complaint documents are irrelevant, that the request was overbroad, that Defendant does not possess any complaint documents, or that complaint documents are protected by attorney-client privilege or 26 V.S.A.§ 1443.

"Evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 339 (1980) (collecting cases); see also Weinstein's Federal Evidence § 401.08[2]; but see V.R.E. 407.

Other complaint documents are relevant. If Defendant does not possess any documents responsive to the request, it should have responded to the request with that information. If Defendant believes documents are protected by the attorney-client privilege or otherwise privileged, it should have provided a privilege log listing the documents so protected and why it was withholding disclosure. See V.R.C.P. 34(b).

Plaintiff's motion to compel is granted as to the documents relating to other complaints. Defendant shall produce documents responsive to the relevant requests for production.

---

[4] These include documents responsive to Plaintiff's Second Set of Requests to Produce requests 2 and 3. Request 2 requested "all Documents constituting complaints made as to any [Defendant] entity or individual pertaining to health, nursing, disability or elder care including, but not limited to, Pillsbury Manor South, from January 1, 2006 through the date of your response," and request 3 requested "all Documents that reference complaints made as to or that reference any John Larkin, Inc. entity including, but not limited to, internal documents generated as the result of complaints, responses to complaints and any government documents or submission that reference any complaint form January 1, 2006 through the date of your response.

### D. Resource Utilization Group Scores

Plaintiff seeks resource utilization group scores for all Pillsbury Manor South residents for the time period July 1 through November 3, 2016. Plaintiff argues that resource utilization scores are "plainly relevant to [Defendant's] negligence." Defendant objects, arguing that resource utilization group scores are irrelevant.

Neither party has submitted any reasoning or argument on which the Court could conclude that resource utilization group scores are relevant or irrelevant. Accordingly, the Court reserves on Plaintiff's motion to compel insofar as it requests the compelled disclosure of resource utilization group scores. Within 14 days of entry of this order, the parties may submit whatever additional briefing they believe is necessary to show resource utilization group scores are relevant or irrelevant.

## II.    Plaintiff's Motion To Compel Against ELCM.

Plaintiff has also moved to compel compliance with its October 9, 2017 subpoena against ELCM itself. Plaintiff filed its motion to compel January 31, 2018. ELCM responded late to the subpoena itself by eight days. ELCM has not filed a motion to quash, and has not filed an opposition to Plaintiff's motion to compel. In its letter to Plaintiff's counsel outlining its objections to compliance with the subpoena, ELCM conclusorily refers to "an undue burden on ELCM as a non-party," asserts the subpoena "request[s] confidential and proprietary information," and that some requests appear "to be more properly directed to John Larkin, Inc."

Even putting aside the fact that ELCM responded late to Plaintiff's subpoena, and even assuming the Court is able to engage with the substance of ELCM's objections, it has not supported its assertions of undue burden, confidentiality or proprietariness, nor cited authority for the proposition that subpoenas must necessarily be directed solely at the party to whom they are most "properly" directed.

Accordingly, Plaintiff's motion to compel against ELCM is granted. ELCM must comply with Plaintiff's subpoena.

Defendant opposes Plaintiff's motion to compel against ELCM, arguing that "Plaintiffs cannot circumvent the confidentiality statute and attorney-client privilege by seeking to compel confidential documents directly from ELCM." See Def. Opp. To Pl. Mot. To Compel Against ELCM Manor South Leasing, LLC D/B/A Pillsbury Manor South at 1 (citing *O'Brien v. Barrows*, No. 1:10-CV-173, 2010 WL 4180752, *1 (D.Vt. Oct. 19, 2010)). Defendant requests that Plaintiff's motion be denied "as to any of [Defendant's] confidential or privileged documents."

Defendant has not submitted a list of what documents it is seeking to prevent disclosure of by ELCM. But see V.R.C.P. 26(h) ("memoranda with respect to any discovery motion shall contain a concise statement of the nature of the case and a specific verbatim listing of each of the items of discovery sought or opposed"). Defendant also does not cite additional privileges or

reasoning against nondisclosure over and above its reasoning provided in opposition against Plaintiff's motion to compel against Defendant itself.

Accordingly, ELCM shall submit a privilege log showing what documents it is withholding on the basis of them being Defendant's confidential or privileged materials. That being said, as described above, documents relating to Defendant's sale of Pillsbury Manor South to ELCM and documents relating to other complaints filed against Defendant cannot be withheld solely on those bases.

If ELCM holds documents it believes to be covered by the peer-review privilege, the Court is not persuaded that such a privilege is waivable. See 26 V.S.A. § 1443; *Wheeler v. Cent. Vt. Med. Ctr., Inc.*, 155 Vt. 85, 89 n. 3, 582 A.2d 165 (1989). Furthermore, the statutory purpose behind 26 V.S.A. § 1443 would be defeated if a transfer of corporate assets invalidated prior peer-review protections. ELCM must include in its privilege log a list of documents that it is withholding on the basis of the peer-review privilege, along with supporting affidavits showing why such documents are in fact peer-review privileged.

## III.    Defendant's Motion For Protective Order.

Defendant has moved for a protective order requiring the return of documents mistakenly disclosed to Plaintiff by ELCM. Plaintiff has not opposed this motion other than to the extent Plaintiff argues it should receive the documents which Defendant seeks to withhold.

Defendant has submitted an affidavit detailing that documents were accidentally disclosed. Plaintiff has not submitted an affidavit or argument contravening Defendant's representation that the disclosure by ELCM to Plaintiff was accidental and inadvertent.

In the attorney-client-privilege and work-product-privilege contexts, disclosure does not operate as a waiver in a Vermont proceeding if (1) the disclosure is inadvertent, (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder took reasonable steps to rectify the error, including (if applicable) following V.R.C.P 26(b)(5)(B). V.R.C.P. 510.

Here, no evidence been submitted regarding the reasonable steps taken to prevent the accidental disclosure, nor any real explanation of how the disclosure happened. Defendant has taken one step to rectify the error: filing the instant motion for protective order seeking the inadvertently-disclosed documents' return. Considering these facts and the argument referred to in *Wheeler* footnote 3, the Court cannot find that the peer-review privilege has been waived in the absence of argument or briefing.

Defendant's motion for protective order is unopposed; Plaintiff has not attempted to argue it may retain accidentally-disclosed documents other than by arguing they are actually not privileged, or are actually discoverable. Defendant's motion is granted in part and denied in part. Consistent with the foregoing reasoning on privilege and discoverability, Plaintiff must return documents which are not discoverable or do not fall within the scope of its pending discovery requests. Plaintiff may retain documents which are discoverable and do fall within the scope of its pending discovery requests.

**Order**

Plaintiff's motion to compel against Defendant, MPR # 2, is granted in part, denied in part, and reserved on in part. Defendant must comply with Plaintiff's subpoena, except that Defendant is not required to disclose peer-review-privileged documents. Plaintiff and Defendant may submit briefing on the relevance of resource utilization group scores within 14 days of entry of this order.

Plaintiff's motion to compel against ELCM, MPR #6, is granted. ELCM must comply with Plaintiff's subpoena. However, documents which are peer-review-privileged may not be disclosed, as they are not subject to discovery.

Defendant's motion for protective order, MPR #4, is granted in part and denied in part. Plaintiff must return documents which are not discoverable or do not fall within the scope of its pending discovery requests. Plaintiff may retain documents which are discoverable and do fall within the scope of its pending discovery requests.

SO ORDERED this 29th day of June, 2018.

_____
Robert A. Mello
Superior Court Judge